**In re James Edward TERRY, Debtor.**

**Bankruptcy No. 80 B 05375 K.**

United States Bankruptcy Court, D. Colorado.

Feb. 25, 1981.

Edward I. Cohen, Denver, Colo., for debtor.

Steven R. Rider, Aurora, Colo., for First Nat. Bank of Denver.

Janet G. MacFarlane, Denver, Colo., Chapter 13 Standing Trustee.

**MEMORANDUM OPINION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DENYING CONFIRMATION**

GLEN E. KELLER, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing upon confirmation of the Debtor's plan under Chapter 13 of Title 11, United States Code. A creditor, First National Bank of Denver, objected to confirmation pursuant to 11 U.S.C. § 1324 alleging that the Debtor's plan was not proposed in good faith under 11 U.S.C. § 1325(a)(3).

The evidence disclosed that the Debtor, James Terry, was formerly an employee of the First National Bank of Denver and was assigned to its Master Charge-Visa department. In that capacity, he had become familiar with the operation of the Bank's credit card system and was himself the holder of a Master Charge and a Visa credit card. He was forced to resign from the Bank in March of 1980 apparently because of poor attendance. He was unemployed

thereafter until June 9th, when he obtained his current position as a customer service representative in the credit card division of Diner's Club International.

At the time Debtor left the First National Bank, he owed Master Charge $556.27 and Visa $1,060.36. On March 31, 1980, Debtor issued two checks totaling $2,256.27 on an account at the United Bank of Lakewood to Master Charge. The account had been closed since October, 1978. Significantly, both checks were credited to Debtor's account on the very day they were received in accordance with the standard procedure then in effect at the Bank. On April 2 and 3, Mr. Terry obtained cash advances from Master Charge in the amount of $1,725.00. Cash advances are basically loans made available by Master Charge to customers in good standing. Mr. Terry was entitled to $1,000.00 line of credit as a card holder. However, because his "payments" to Master Charge exceeded the amount due, he was able to obtain additional moneys based on his apparent credit balance. On April 22, the United Bank of Lakewood returned both checks because of the status of the account. Before Master Charge was able to charge Debtor's account for the $2,256.27, he had obtained some $1,875.00 in cash advances and made numerous purchases of merchandise with the charge card.

A strikingly similar series of events occurred with respect to Visa. On March 31 and April 4, 1980, Debtor paid his Visa bill with two checks totaling $2,576.21. Like the Master Charge payments, these checks were drawn on Debtor's former account at United Bank of Lakewood. On April 10, Mr. Terry borrowed $1,500.00 using Visa's cash advance system. Once again, Debtor was able to obtain money in excess of the usual $1,000.00 limit because his recent "payments", which were credited to his account upon receipt, created an apparent balance in his favor. The checks were returned by United Bank of Lakewood, and Visa charged the amounts back to Debtor on April 23.

Mr. Terry continued to use both credit cards until June of 1980. Interestingly, the objecting creditor produced at the confirmation hearing a written statement signed by the Debtor in which he represented that the cards had been destroyed by April 25. At the time the four checks were written on the United Bank of Lakewood, Debtor's account with that Bank had been closed for a year and a half. No deposits had been made therein since October of 1978. These facts require denial of confirmation. The evidence is conclusive that the Debtor has used his knowledge of the credit card operation to manipulate the Bank. Mr. Terry was able to obtain over $3,200.00 in cash within 10 days by creating false credit balances with Master Charge and Visa. The Debtor's scheme worked because he took advantage of two facts: (1) Payments by check are apparently credited to a customer's account upon receipt, well prior to the time Master Charge and Visa are able to verify that the check has been honored by the drawee bank; (2) there is an inevitable delay in the check collection process when the card company is dealing with a smaller, more remote bank. This explains why Debtor did not write the bogus checks against his account at the First of Denver. Such an "in-house" check would have been collected faster, thus shortening the time Mr. Terry would have available to create the false credit balances and obtain cash advances against those balances. Mr. Terry testified that he thought the United Bank of Lakewood checks would be honored. The absence of any deposits for over a year and a half makes this claim inherently implausible.

 Now the Debtor seeks to invoke the bankruptcy law to discharge these unsecured obligations for $1.00 apiece. It is true that a Chapter 13 plan is not necessarily lacking in good faith just because it deals with debts that might be nondischargeable under Chapter 7. *In re Jenkins*, 4 B.R. 278 (Bkrtcy., D.Colo. 1980). The mandate in 11 U.S.C. § 1328 is quite explicit that many debts nondischargeable under Chapter 7 can be discharged in Chapter 13. This case does not turn on whether a Chapter 13 plan that

proposes to pay nominal amounts on claims that would be nondischargeable in Chapter 7 is in good faith. This Court has previously found "good faith" to be lacking in a case similar to the one at hand. *See, In re Tanke,* 4 B.R. 339 (Bkrtcy., D. Colo. 1980). In *Tanke* it was noted at 340 that

> [t]his case couples recent egregious fraud with no good faith effort to repay the victim. To confirm this plan would, in effect, make the bankruptcy court the Debtors' instrument for perpetrating a fraud .... [I]t would ignore the plain meaning of the statute requiring that a plan be proposed in good faith.

There is no proof in this case that Mr. Terry obtained the cash advances from Master Charge and Visa with bankruptcy in mind. Such a finding is not necessary for good faith to be lacking. The Debtor's conduct evinces a continuum of bad faith that began with fraudulently obtaining credit and culminated in the filing of this case. Mr. Terry admitted under cross-examination that he misrepresented the nature of his obligations to Master Charge and Visa in his bankruptcy schedules. He described them as debts for purchases of merchandise in 1978 and 1979. The evidence clearly showed this to be untrue. In short, this Chapter 13 plan is so tainted with bad faith conduct that confirmation cannot be allowed. Now, therefore, it is

ORDERED that confirmation of the proposed plan of the Debtor, James Edward Terry, is denied.

FURTHER ORDERED that a hearing shall be held on March 9, 1981, at the hour of 8:30 a. m., in Courtroom B, United States Bankruptcy Court, 400 Columbine Building, 1845 Sherman Street, Denver, Colorado to determine whether this case should be dismissed or converted pursuant to 11 U.S.C. § 1307.