**In re Arnold L.K. GUNN, Jr., Leslie Marie Westfield Gunn, Debtors.**

**Bankruptcy No. 383–02899.**

United States Bankruptcy Court, D. Oregon.

Feb. 10, 1984.

---

4. See 18 U.S.C.A. § 152 (Supp.1983).

5. Patricia Shelby's current address is 7240 Wellswood Lane, Knoxville, Tennessee.

Magar Magar, Portland, Or., for debtor.

Donald Howe, Asst. Atty. Gen., Salem, Or., for the State.

Robert Myers, Portland, Or., Trustee.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

The debtors have filed herein a plan which provides that the debtors will pay to the trustee the sum of $125 per month for a period of 36 months. From this sum the trustee is to pay the expenses of adminis-tration, the sum of $33 upon an allowed secured claim of $1,000, the priority tax debts of $1,800 and the balance to unsecured creditors which is calculated to return a dividend to unsecured creditors of approximately 3%. The debtors propose to pay outside the plan a secured debt owing upon a 1983 Toyota with a balance of $5,800 in which the collateral is valued by the debtors at $6,200 and a secured debt owing upon a 1979 Firebird with a balance of $9,600 in which the collateral is valued by the debtors at $4,000.

The Chapter 13 Statement lists unsecured, non-priority debts of $37,228.47. Of this amount $11,568.81 is due upon student loans, $500 for medical expenses, and the balance represent charges upon credit cards, utilities, and consumer purchases. In addition the Statement lists secured debts of $6,000 for which there is presently no collateral.

The State of Oregon on behalf of Portland State University and the University of Oregon to whom the student loans are owing has objected to confirmation of the debtors' plan on the ground that it has not been filed in good faith.

The following statement of facts has been taken from the memorandum filed by the State:

Both of the debtors, filing jointly, have obtained college degrees using their student loans and have excellent earning potential due to their education. Debtor Leslie Gunn received her B.S. from Portland State in 1976, majoring in psychology; received her M.S. in Education in 1977; and should be receiving her PhD in counseling psychology from the University of Oregon some time this academic year at the age of 29. She has three years cumulative work experience with psychotherapy and is presently employed on a crisis team as a mental health therapist. Her outstanding student loans total $8,497.43. She has been granted three hardship deferrments, which gave additional time to make payments at her request on the basis of separation from her husband. Presently she has received a

student deferrment on the basis of her enrollment at the University of Oregon. Debtor Arnold Gunn received his B.S. in Administration of Justice from Portland State in 1980. He has been employed for a year as a mental health counselor, residing in Lakeview Terrace, California. His outstanding student loan debt is $3,043.04.

The Chapter 13 plan reveals that only three percent will be repaid to unsecured creditors, including the student loans. This is a three year plan that fully repays one secured creditor and two priority debts. Although Leslie Gunn has a monthly take-home pay of $1,120 and Arnold Gunn has a monthly take-home pay of $1,010, the debtors live in different states, Oregon and California, so that their living expenses are doubled by the cost of operating two households. They report only $131 remaining after monthly expenses. The total amount of their unsecured debt is $37,228.47 jointly. Their combined NDSL obligation to the Oregon System of Higher Education is $11,568.81, which is 31 percent of the unsecured debt. If the debtors' plan is confirmed, only $347 will be repaid on their student loans. Under a Chapter 7 bankruptcy, the student loans would be nondischargeable, 11 U.S.C. § 523(a)(8).

The State objects to confirmation on the ground that the plan is not filed in good faith. In support of the objection it argues that lack of good faith is shown by the fact that the student loans constitute approximately one third of the unsecured debt; that the student loan obligations would not be dischargeable in a chapter 7 case; that while the budget submitted by the debtors may be realistic at the present while the debtors are maintaining two separate households, their living expenses would be considerably less when the wife completes her education this spring and the debtors are able to live together; that the dividend to unsecured creditors is unreasonably small; that the debtors' failure, prior to the filing of this case, to make any attempt to repay the student loans demonstrates lack of good faith in the filing of their plan; and

that the plan provides for payments for a period of only three years.

None of the courts of appeal who have considered the question of good faith under 11 U.S.C. § 1325(a)(3) have held that the statute requires any minimum dividend to unsecured creditors except as required by § 1325(a)(4). All of these courts have held that there are a number of factors which should be considered in determining whether a plan is filed in good faith, no one of which will be determinative in and of itself. Although each of the courts have mentioned a number of such tests and the factors mentioned by one court may not exactly track the factors mentioned by another court, the differences are minimal. The factors set forth in the case of *In re Estus,* 695 F.2d 311 (8th Cir.1982) are representative of the factors enunciated by other courts of appeal. The *Estus* case sets forth the following factors:

"(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee." *Id.* at 317

Other courts of appeal have stated the first factor mentioned in *Estus* as whether or not, considering the debtor's financial circumstances, the plan represents a reasonable effort to pay the debts.

■ In this case one factor exists which, although not asserted by the State, dictates that the plan cannot be confirmed. 11 U.S.C. § 1322(b)(1) provides that a plan may designate a class or classes of unsecured claims but may not discriminate unfairly against any class so designated. The Chapter 13 Statement lists a debt owing to City Ford of $9,600 secured by a 1979 Firebird automobile worth $4,000. The plan proposes that this debt be paid in full outside the plan. Using these figures this creditor would have an allowed secured claim of $4,000 and an allowed unsecured claim of $5,600. By providing for payment in full of the debt outside the plan the plan in effect provides for one class of unsecured creditors consisting of this single unsecured debt of $5,600 be paid 100% and for a second class of unsecured creditors, consisting of all of the other unsecured debts, to be paid approximately 3%. This classification of creditors results in unfair discrimination and is in violation of § 1322(b)(1).

In the event that the debtors should desire to file an amended plan which would not violate the last mentioned section, the court will also discuss the objections which have been raised by the State.

Section 1322(c) provides that a plan may not provide for payments over a period longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period longer than five years. It is this court's opinion that Congress intended by this section that normally a plan should not extend over a period longer than three years and that the cause mentioned for approval of a plan longer than three years relates to a cause which would be beneficial to the debtor. Thus the court might approve a plan if the longer period were necessary to permit the plan to meet the requirements of § 1325(a)(4), or to permit the debtor to take advantage of the provisions of § 727(a)(9). This court has disapproved plans extending beyond three years where the sole purpose was to provide larger dividends upon unsecured creditors than could be paid within three years. In the present case there would be no benefit to the debtors in extending payments beyond three years.

In view of the present issues of the debtors and the likelihood that the income of the wife will increase when she completes her education, it is likely that the obligations due upon the student loans would not be dischargeable in a case under chapter 7. If the debtors' plan is confirmed in this case and the debtors were to complete the plan, the student loans would be discharged under § 1328(a).

■ Since Congress provided for the discharge of student loan obligations in a Chapter 13 case, it is apparent that the existence of such an obligation will not alone dictate refusal of confirmation. As the various courts of appeal have held, the existence of such an obligation is only one of the factors which should be considered. In the present case, while it is obvious that one of the purposes is to discharge the student loan obligations, such purpose does not appear to be the principal purpose in that these obligations amount to only approximately one-third of the total unsecured debt.

The court considers the failure of the debtors to make some provision for payment of the student loan obligations prior to the filing of this case not to be an important factor.

■ Generally the court should consider the financial circumstances of the debtor at the time of the filing of the case in determining whether the plan represents a reasonable effort to pay the debts. While § 1329 provides for modification of a plan subsequent to confirmation to increase payments upon claims, it is doubtful whether such modification can be made except upon request of the debtor. There is no provision

in chapter 13 for the filing of a plan by the trustee or creditors as in chapter 11. Nor would it appear appropriate for the court, in .the normal case, to require that a plan make provision for automatic increased payments by the debtor should the debtor's earnings increase after confirmation. On the other hand, if it appears that the debtors' financial circumstances are merely temporary and that in all likelihood the debtor's income will substantially increase or the debtor's monthly expenses will substantially decrease in the near future it might be appropriate for the court to refuse confirmation of a plan which failed to take these matters into account. In the present case it appears that the present financial circumstances are temporary and that when the wife completes her education in the spring of this year there would be little reason for the debtors to maintain separate households. Were the debtors to maintain a single household, their monthly expenses should be substantially reduced making it possible for them to provide larger monthly payments to the trustee. An amended plan should provide for such larger payments to commence on the date that the debtors presently expect their circumstances will change. The plan could later be modified if the debtors' expectations do not occur.

The court is also concerned with the automobiles which the debtors expect to retain and what appears from their schedule of assets to have been their past lifestyle.

In addition to the $37,228 in unsecured debts shown in the statement are tax debts of $1,800 and secured debts in which the debts exceed the value of the collateral by $13,300. Thus the total amount of unsecured debt is $52,300. Of this total $11,600 represents student loans, $500 represents medical expenses and the balance of $40,200 represents amounts owing upon charge accounts and other debts voluntarily incurred. At the same time the debtors appear to find it necessary to drive one automobile which is nearly new and another which would be thought of as a luxury or sport vehicle. It would appear that the debtors have assumed a lifestyle not within their income and with little regard for their ability to pay for items purchased. They have relatively nothing to show in present possessions as a result of their spending habits. Although their combined net incomes amount to $2,130 per month, they apparently believe that after monthly payments on their automobiles of $430 per month and monthly payments of $33 to complete the purchase of furniture worth $1,000 they can afford to pay only $92 per month upon unsecured debts of over $52,000. This does not demonstrate a reasonable effort to pay their debts.