**In re Michael B. McALOON and Margaret A. McAloon, Debtors.**

**Bankruptcy No. 84–00977–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Dec. 3, 1984.

James R. Sheerah, Richmond, Va., for debtors.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court on an objection by the State Education Assistance Authority ("SEAA") to confirmation of the debtors' Chapter 13 plan. A hearing was held on October 22, 1984 for the purpose of taking evidence and hearing argument upon the stated objection. At the conclusion of the hearing, the Court took the matter under advisement. After consideration of the briefs filed by the parties and the evidence produced at the hearing, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Michael B. and Margaret A. McAloon ("debtors") filed their petition in bankruptcy under the provisions of Chapter 13 on July 6, 1984. Their Chapter 13 plan was filed contemporaneously with the petition. The debtors' plan brought forth three objections, two of which have been resolved. The only remaining objection is that of the SEAA, an agency of the Commonwealth of Virginia, which filed an objection to confirmation of the debtors' proposed plan on the grounds that under 11 U.S.C. § 1325(a)(3) the plan was not proposed in good faith. The SEAA is an unsecured creditor which under the debtors' plan will be paid 25 percent of its allowed claim. The debt owed to the SEAA arises out of a series of student loans to both Michael B. and Margaret A. McAloon dating back from September 1977 to December 1983.

The Chapter 13 Statement filed by the debtors list total unsecured claims of $38,163.48 of which $29,500.00 are educational loans taken from the Virginia Education Loan Authority and the New Jersey Higher Education Assistance Authority. Thus, 77 percent of the total amount of the unsecured debt stems from educational loans. Had the debtors filed their petition under the provisions of Chapter 7, these educational loans would be nondischargeable pursuant to 11 U.S.C. § 523(a)(8). However, the debtors chose to avail themselves of the more liberal discharge provisions of 11 U.S.C. § 1328 by filing a Chapter 13 petition.

The debtors' Chapter 13 plan is to be funded from their monthly excess income over and above living expenses in an amount of $474.12 over a period of 42 months. The debtors expect their 1984 gross income to be in the neighborhood of $39,000. Michael B. McAloon is a First Lieutenant on active duty in the U.S. Army at Fort Lee, Virginia. Margaret A. McAloon is a psychologist employed by the Commonwealth of Virginia at Central State Hospital, Petersburg, Virginia. Mr. McAloon testified that he expected a $200—$300 per month increase in salary when his promotion to Captain was finalized in approximately 14 months hence. The Chapter 13 Statement reflects that the debtors' net monthly income is $3,104.66, with expenses being $2,480.00. The testimony at trial indicated that when Mr. McAloon is assigned to the Republic of Korea beginning in January 1985, the debtors' living expenses will increase approximately

$300.00 a month because of some duplication of expenses.

The debtors own two parcels of real property in Chesterfield County, Virginia. One parcel was acquired in 1980 for $30,000 and is unimproved. The second parcel is used by the debtors as their principal residence and was acquired in 1983 at a price of $87,500. On the first parcel which is unimproved, the debtors currently owe $19,000 on a deed of trust note. The debtors have been attempting to sell the unimproved lot for more than two years without success. Mr. McAloon testified that the inability to sell this parcel of land contributed significantly to the debtors' overall poor financial position which ultimately resulted in their filing this Chapter 13 petition.

The Chapter 13 plan filed by the debtors seeks to surrender the unimproved lot to the holder of the deed of trust note in satisfaction of that obligation. With respect to the principal residence of the debtors, the current assessment value of the home is $93,000. The debtors' plan provides for retention of the home and whatever equity exists at the present as well as any increase in the equity in the home during the life of the plan. Finally, the evidence showed that prior to the purchase of the home in Chesterfield County, Virginia, the debtors were renting their principal residence at $575 per month. After the purchase of the residence, the debtors increased their monthly payments for shelter to $996.

The debtors' plans for the future are somewhat indefinite at this time. Mr. McAloon has recently extended his tour in the armed services and will be leaving for Korea on January 7, 1985. This tour is for twelve months at a minimum with his family not accompanying him. Although Mr. McAloon would like to leave the Army and enter civilian life, he has found it difficult to obtain a commensurate executive level position outside of the services. Mr. McAloon testified that one of the principal reasons for his re-enlistment was this inability to find suitable employment in civilian life.

Mrs. McAloon has been with the Commonwealth of Virginia for four and one-half years. For three years this coming January she has worked as a psychologist. Although Mrs. McAloon has the opportunity in the near future to advance in her career to a position making more money, she testified that her employers are aware of the filing of this petition in bankruptcy and that her financial condition may have an adverse impact on her ability to obtain that position. Both debtors are well-educated. Michael B. McAloon has a B.A. degree in economics from Stockton State College, and a M.A. degree in business management from Central Michigan University. Margaret B. McAloon has a B.S. degree from Stockton State College and is currently doing graduate work at Virginia Commonwealth University. Finally, the debtors have three children, ages 10, 14, and 15.

In addition to the real property discussed above, the debtors also own two automobiles. One is a 1981 Plymouth on which $185 a month is paid to the Bank of Virginia on the note. Payments on this automobile are three months delinquent. The second automobile is a 1978 Oldsmobile Cutlass on which the purchase money secured creditor has been fully paid off. However, in 1983 the car was used as collateral for a loan by Avco Financial Services of Madison Heights, Inc. This note to Avco is currently two months in arrears with the debtors making only the interest payments on the note. The plan proposes to pay creditors whose claims are secured by tangible personal property an amount equal to the value of the security plus interest over the life of the plan.

Michael B. McAloon also testified that he purchased a piano at Christmas for the children which he admits was an "impulse" purchase. The plan proposes to retain the piano and pay $38.00 per month for 36 months. The price of the piano in December 1982 was approximately $1,800.

Mr. McAloon testified that his family's financial difficulties arose primarily after the purchase of their home. Their intent was to sell the unimproved lot which they

had purchased for $30,000 at the time they acquired their principal residence to avoid making payments on two parcels of real estate. However, Mr. McAloon testified that neither he nor the real estate agent retained to sell the lot could find a purchaser for it. Thus, by taking on an $87,500 debt without ridding themselves of a $19,000 debt, the debtors were confronted by a demand on their resources which they could not satisfy. Mr. McAloon testified that his two biggest financial mistakes in the recent past was the purchase of the piano for his children and believing that the real estate agent hired to sell the unimproved lot could in fact sell the lot.

The debtors' financial condition resulted in the non-payment of some creditors. These creditors ultimately resorted to creditor process for the collection of these debts, including garnishment of the debtors' personal checking account, a "warrant in debt" issued on the debtors' delinquent Bank of Virginia Master Charge account, and a judgment against the debtors for fees owed to the Brandermill Community Association. Unable to find a way out of their financial predicament, the debtors filed their petition in bankruptcy.

The testimony of Arthur Pearson, Manager of the SEAA, indicated that on August 5, 1983, when the debtors filed their last application for a student loan, they failed to disclose the $87,500 mortgage debt as required by the application. The debtors proffered no explanation for this omission.

CONCLUSIONS OF LAW

The requirements for confirmation of a Chapter 13 plan are found in 11 U.S.C. § 1325(a).[1] The SEAA's objection to confirmation of the debtors' plan is that the plan has not been proposed in good faith under § 1325(a)(3) because the debtors propose to retain their home, two automobiles, and a piano while paying unsecured creditors only 25 percent of the amount of their allowed claims. The SEAA states that inasmuch as 77 percent of the total amount of unsecured debt consists of educational loans which would otherwise be nondischargeable under Chapter 7 of Title 11, this Court should conclude that the debtors' plan is proposed in bad faith and merely for the purpose of discharging the educational loan debt under Chapter 13 while retaining other property which was acquired after the educational loan debt was incurred.

The debtors stipulated at trial that the educational loan debts at issue herein would be nondischargeable under the provisions of 11 U.S.C. § 523(a)(8). However, § 523 does not apply to Chapter 13 petitions. Specifically, Chapter 13 carries with it its own discharge provisions contained in 11 U.S.C. § 1328.[2] Section 1328(a) makes

1. 11 U.S.C. § 1325(a). The court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
(3) the plan has been proposed in good faith and not by any means forbidden by law;
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder; and
(6) the debtor will be able to make all payments under the plan and to comply with the plan.
2. 11 U.S.C. § 1328(a). As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
(1) provided for under section 1322(b)(5) of this title; or

clear that the only debts which are nondischargeable under Chapter 13 are those provided for under § 1322(b)(5) and those found in § 523(a)(5). In enacting Chapter 13, Congress intended to encourage its use and thus intentionally made the discharge provisions more liberal than those contained in Chapter 7. *See In re Vensel,* 39 B.R. 866 (Bankr.E.D.Va.1984); *In re Rowe,* 17 B.R. 870 (Bankr.E.D.Va.1982); *In re Seely,* 6 B.R. 309 (Bankr.E.D.Va.1980).

■ This Court must look to the totality of the circumstances to determine whether the requirement of good faith is met by the debtors in proposing their Chapter 13 plan. *In re Deans,* 692 F.2d 968 (4th Cir.1982).[3] This test was found by the Fourth Circuit to be the best means for carrying out the intent of Congress in confirming Chapter 13 plans. As stated in *Deans,* "good faith" is no where defined in the Code. There is similarly no legislative history which would be useful in guiding the courts. *Id.* at 969. The Fourth Circuit wisely rejected a *per se* rule of substantial repayment which must accompany every Chapter 13 case in order for the good faith requirement to be met. Congress, in fact, set a minimum repayment level by enacting § 1325(a)(4), which provides that unsecured creditors cannot be paid "less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7." 11 U.S.C. § 1325(a)(4).

■ Although the Fourth Circuit rejected the *per se* substantial repayment requirement to meet the test of good faith, the court has warned potential Chapter 13

debtors that it will not tolerate "an abuse of the provisions, purpose, or spirit of [the provisions of Chapter 13]". *Deans,* 692 F.2d at 972. Thus, in order to determine whether the debtors are proposing a plan in good faith or instead abusing the provisions, purpose, or spirit of Chapter 13, the Court must take into consideration all of the relevant factors including: (1) the percentage of proposed repayment under the plan; (2) the debtors' financial situation; (3) the period of time repayment will be made; (4) the debtors' employment history and prospect; (5) the nature and amount of unsecured claims; (6) the debtors' past bankruptcy filings; (7) the debtors' honesty in representing facts; and (8) unusual or exceptional problems facing the debtor. *Id.* at 972.[4]

■ The Court finds that with respect to the first factor, the percentage of proposed repayment in the debtors' plan is 25 percent of the unsecured debt, of which 77 percent of the total amount of unsecured debt is student loan obligations. The fact that these loan obligations would be nondischargeable under Chapter 7 is insufficient, in and of itself, to base a finding of bad faith or deny confirmation. *See In re Vensel,* 39 B.R. 866, 868 (Bankr.E.D.Va.1984); *In re Lincoln,* 30 B.R. 905, 909 (Bankr.D. Col.1983); *In re Terry,* 9 B.R. 314, 315 (Bankr.D.Col.1981). The SEAA objects that it is not good faith for the debtors to retain their house, their two cars, and piano which were acquired after the incurring of a substantial part of the student loan debt, while only paying the unsecured creditors 25 cents on the dollar.[5] The question is

---

(2) of the kind specified in section 523(a)(5) of this title.

**3.** Five other circuits have adopted the totality of the circumstances test. See *Flygare v. Belden,* 709 F.2d 1344 (10th Cir.1983); *In re Johnson,* 708 F.2d 865 (2d Cir.1983); *Public Finance Corp. v. Freeman,* 712 F.2d 219 (5th Cir.1983); *In re Rimgale,* 669 F.2d 426 (7th Cir.1982); *In re Estus,* 695 F.2d 311 (8th Cir.1982).

**4.** These factors will be sufficient to make a determination of good faith in the ordinary case. However, as the Fourth Circuit made clear in *Deans,* this "check-list" is neither exclu-

sive nor exhaustive. *See also In re Vensel,* 39 B.R. 866, 868 (Bankr.E.D.Va.1984).

**5.** The SEAA cites *In re Gunn,* 37 B.R. 432 (Bankr.D.Ore.1984) and *In re Walker,* 20 B.R. 372 (Bankr.E.D.Va.1982) for this proposition. In *Gunn,* the court refused to confirm a Chapter 13 plan because one class of unsecured creditors was to receive 100% repayment while a second class of unsecured creditors was to receive only 3% repayment. The court found the plan to unfairly discriminate against one class of unsecured creditors in violation of § 1322(b)(1). *Gunn,* 37 B.R. at 435. In *Walker,* this Court refused to confirm a modified Chap-

whether 25 percent repayment is so minimal within the facts and circumstances of this case as to evidence a lack of good faith.

This Court has previously found in *In re Vensel*, 39 B.R. 866 (Bankr.E.D.Va.1984) that an 11 percent repayment in a Chapter 13 plan was not proposed in bad faith when 53 percent of the debtor's obligations were educational loan debts otherwise nondischargeable in Chapter 7. Another case in this district has found that good faith existed in the proposal of a Chapter 13 plan where the unsecured creditors were to receive 32% of their allowed claims and where nearly 80% of the unsecured debt was student loan obligations. *See In re Rowe*, 17 B.R. 870 (Bankr.E.D.Va.1982); *but see, In re Williams*, 12 B.C.D. 435, 42 B.R. 474 (Bankr.E.D.Ark.1984) (a proposed 37% repayment of student loans was held to be in bad faith where the debtor made no effort to repay the loans and $100 more could have been paid into the plan). In accord with the law in this district is the case of *In re Lambert*, 10 B.R. 223 (D.C.E.D.N.Y.1981) where a proposed repayment to unsecured creditors of 26 percent was found to have been made in good faith where 65 percent of the total amount of unsecured debt consisted of educational loan debts.[6]

■ Although the percentage of proposed repayment may seem inequitable to the SEAA, this Court has previously had the occasion to state that:

[I]t is not up to this Court to rewrite the provisions of Chapter 13 of the Bankruptcy Code. Congress wanted to encourage the use of Chapter 13 by providing those who took that option with a broader discharge than they would receive in Chapter 7.... It appears that the debtor has simply attempted to use the law as written to his advantage.

*In re Vensel*, 39 B.R. 866, 869 (Bankr.E.D. Va.1984).[7] This Court is likewise in agreement with the statement of the New York court in the *Matter of Lambert*, where it is stated that "[a] lack of good faith should not be inferred from an action of the debtor which is authorized by the plain meaning of the statute." *Lambert*, 10 B.R. 223, 226 (E.D.N.Y.1981).

■ As a result, this Court finds that a 25 percent repayment over a period of 42 months where 77 percent of the total amount of unsecured debts are student loan obligations cannot be the basis for a finding of bad faith when Congress specifically intended for debtors to take advantage of the more liberal discharge provisions found in Chapter 13 and that the only floor on repayment is found in § 1325(a)(4)

ter 13 plan where the proposed repayment to unsecured creditors was reduced from 39% in the original plan to 10% in the modified plan, thereby unfairly discriminating against the unsecured creditors in violation of § 1322(b)(1). These cases are not persuasive in this case because the proposed percentage of repayment here is 25%, while in *Gunn* and *Walker* it was 3% and 10% respectively, a substantial difference when considering whether the plan unfairly discriminates against a class of unsecured creditors pursuant to § 1322(b)(1). *See also Barnes v. Whelan*, 689 F.2d 193, 200–02 (D.C.Cir.1982).

6. During the Court's consideration of this case, counsel for the SEAA apprised the Court of the decision of the United States District Court for the Eastern District of Virginia, Norfolk Division, in *State Education Assistance Authority v. Johnson*, 43 B.R. 1016 (E.D.Va.1984). The district court in *Johnson* remanded the case to the bankruptcy court for further proceedings to

make specific findings of facts upon consideration of the circumstances of the case so as to provide a basis for applying the test found in *Deans*, and was not making an ultimate determination of the case.

7. Since the initial enactment of Chapter 13 in 1978, Congress has had several opportunities to amend the discharge provisions contained in § 1328 of the Code. The most recent opportunity came in July, 1984 with the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353. Congress chose again not to make any changes with respect to the treatment of educational loan debts in Chapter 13 cases. Moreover, Congress chose not to alter the requirements for confirmation of a Chapter 13 plan except for certain instances where the trustee or the holder of an allowed unsecured claim objects to confirmation. 11 U.S.C. § 1325. The latter amendment is inapposite here. Thus, this Court's statement in *Vensel* is as pertinent today as it was when made.

which imposes on the debtors in this case the obligation to pay unsecured creditors more than they would have received in a liquidation proceeding.

■ The second factor in *Deans* relates to the debtors' financial situation. The uncontroverted evidence at trial from which the findings of fact herein are made indicate that the debtors' financial situation worsened as a result of some unwise purchases, *e.g.*, a piano, and because of the inability of the debtors to sell the unimproved parcel of real estate in Chesterfield County, Virginia. The drain on the family's resources caused by the additional mortgage payment on the unimproved lot was the cause of the debtors' delinquency on any number of debts resulting in garnishment of the debtors' personal checking account, a "warrant in debt" being issued on a delinquency in the debtors' Bank of Virginia Master Charge account, and a judgment being issued on a claim for fees owed to the Brandermill Community Association. At the time of filing this petition, the student loans owed by the debtors had generally not become due, with two exceptions: (1) a $5,000 note became due on August 1, 1980; and (2) a $3,996 note became due January 19, 1983.

This Court concludes from the foregoing that it was the debtors' inability to sell the unimproved parcel of real estate coupled with some unwise purchases which lead to their financial collapse. There was no evidence at trial which would indicate that the debtors' intention in filing their Chapter 13 plan was solely to discharge their student loan debts or that they entered into these other financial arrangements in order to create an economic situation where Chapter 13 would be available to them. Rather, although their student loan debts had not generally become due, creditors had already begun to resort to legal process to protect their various interests. The Court finds that under the facts and circumstances of this case the debtors are entitled to the protection of this Court to attempt a solution to their financial problems.

The third factor is the period of time repayment will be made. Here, the plan calls for repayment over a period of 42 months which is within the range provided by Congress and, thus, no bad faith can be inferred from complying with provisions of the statute.

The fourth factor concerns the debtors' employment history and prospects. In this case, the debtors are both well-educated and no evidence was produced which would indicate that the debtors will not remain employed in at least the capacity which they now find themselves in order to make payments under the plan. In all likelihood, one or both of the debtors will receive a promotion during the life of the plan which will add to the available resources of the debtor. The Court finds that the debtors propose to invest a substantial portion of their earnings over living expenses to fund the plan.[8] The Court concludes that no bad faith may be found from the debtors' employment history or prospects.

The fifth and eighth factors have been previously discussed and no further comments are necessary here. With respect to the sixth factor, the debtors have not previously filed a petition in bankruptcy.

■ Finally, with respect to the seventh factor, the SEAA states that the debtors' failure to list the $87,500 mortgage on their last student loan application demonstrates dishonesty in representing facts which should be the basis for a finding by this Court of bad faith. Although the Court concludes that this omission does show some evidence of bad faith on the part of the debtors, nevertheless this is but one factor of many. Under the Fourth Circuit's test established in *Deans*, this Court must look to the totality of the circumstances to determine whether good faith exists in the proposal of a plan. Taking

---

**8.** Mr. McAloon testified that once he is stationed in Korea the McAloon's total living expenses will increase by approximately $300, raising the debtors' total living expenses to $2,780.00. With the debtors' net monthly income being $3,104.66, the debtors have proposed to pay substantially all of the remaining surplus into the plan.

into consideration the totality of all of the circumstances found in this case, the Court concludes that the debtors' failure to list a prior mortgage on a student loan applica-, tion, while lacking in complete honesty, is insufficient under the facts of this case to cause this Court to conclude that the plan was proposed in bad faith. In fact, if it were assumed that the final loan was procured by fraud due to the failure to make the required disclosure of the home mortgage loan, then that debt, although possibly nondischargeable in Chapter 7, would be expressly discharged in Chapter 13 pursuant to 11 U.S.C. § 1328.

Accordingly, the Court concludes that the SEAA's objection to the confirmation of the debtors' Chapter 13 plan should be denied.