**In re Jack S. COBURN, Candi L. Coburn, Debtors.**

**Bankruptcy No. 393–33096–H13.**

United States Bankruptcy Court, D. Oregon.

Nov. 28, 1994.

Bonni Canary, Portland, OR, for creditor.

Caroline Cantrell, Portland, OR, for debtors.

Robert W. Myers, Trustee in Bankruptcy, Portland, OR.

## OPINION

HENRY L. HESS, Jr., Chief Judge.

This matter came before the court upon objections to confirmation of the debtors' chapter 13 plan by the State of Oregon, Adult and Family Services Division (creditor). The creditor is represented by Bonnie Canary and the debtors are represented by Caroline Cantrell, both of Portland, Oregon.

The creditor is the holder of an allowed unsecured claim against one of the debtors, Candi Coburn. The plan in this case was confirmed subject to further objections by the creditor. Such objections were timely made and an evidentiary hearing was held on the objections.

The court has reviewed the file and considered the testimony adduced at the evidentiary hearing held on March 15, 1994. In sum, the creditor objects to confirmation under § 1325(a)(3) [good faith] and § 1325(b) [disposable income test]. The creditor has asked the court to consider several factors in assessing the good faith issue.

The court does not believe all the factors raised by the creditor are relevant or useful in determining the good faith question. These factors will be discussed, however, in the following section of this opinion in the order and manner presented in the creditor's proposed findings of fact and conclusions of law dated April 4, 1994.

FINDINGS OF FACT—

A. Good faith—The court makes the following findings of fact on the factors raised by the creditor on the good faith issue. The usefulness of each factor will also be discussed where its usefulness is questioned.

1. "Amount of proposed payments and the amount of the debtors' surplus."

a. Proposed payments—The debtors' chapter 13 plan dated June 14, 1993 proposes payments to the chapter 13 trustee of $481 monthly.

b. Debtors' surplus—The amended budget introduced at the hearing shows an excess of $330 monthly. Thus, the debtors propose to pay more to the trustee than their surplus. It therefore appears that the June 14, 1993 plan is not mathematically feasible and under § 1325(a)(6) should not be confirmed. Even if the debtors proposed a plan that would pay the trustee only $330 monthly, the issues raised by the creditor would still need to be resolved. Since these issues were fully litigated, the court will dispose of them in this opinion for the benefit of both parties.

At this time, the debtors propose to pay more to the trustee than their budget shows they can afford. This does not seem to be an indication of bad faith. If the debtors budget showed they could pay $500 monthly to the trustee but the plan proposed to pay only $300 monthly, the plan could not be confirmed because of the requirements of § 1325(b) concerning the contribution of all the debtors' disposable income. It is not appropriate, however, to consider such an objection under the "good faith" test of § 1325(a)(3). As the leading bankruptcy treatise has aptly noted:

Since Congress has now dealt with the issue quite specifically in the ability-to-pay provisions, there is no longer any reason for the amount of a debtor's payments to be considered as even a part of the good faith standard." Collier on Bankruptcy, ¶ 1325.04[3], p. 1325–20 (15th Ed.).

The Ninth Circuit Court of Appeals foresaw this development back in 1982 when it wrote the following in its opinion in *In re Goeb*, 675 F.2d 1386 (9th Cir.1982):

"In conclusion, we decline to impose a substantial-repayment requirement because (1) it is contrary to the language of the statute, (2) whether it would best further the purposes of the Bankruptcy Code is uncertain, and (3) Congress is aware of the perceived deficiency in § 1325(a). Rather than set a rigid standard under the guise of interpreting "good faith," we deem it advisable to apply the law as written and wait for Congress to create, if it chooses, further conditions for the confirmation of Chapter 13 plans." *Id.* at 1389.

This court agrees.

2. "Employment history"—Both debtors are employed but both have experienced periods of unemployment or idleness. For example, Jack Coburn was unemployed for 7 months during 1992 and Candi Coburn's work as a heavy equipment operator is seasonal. Their combined income is therefore difficult to project accurately.

The court questions the usefulness of this factor in determining good faith. If a debtor has had difficulty in obtaining steady employment, is that some indication of bad faith in the proposal of a plan? Or, if a debtor with a long history of continuous employment has recently fallen on hard times and finds it necessary to file bankruptcy is this indicative of bad faith? The answer to these two questions is clearly no.

3. "Duration of plan"—The debtor's confirmed plan in this case was estimated by the chapter 13 trustee to require 46 months to complete in order to pay certain priority claims.

Again, one wonders what the use of this factor is in assessing good faith. Section 1322(c) specifies that a plan may not exceed 36 months in duration except for "cause." This court has repeatedly held over many years that "cause" to exceed 3 years must be something for the debtor's benefit. See, for example, *In re Howell*, 76 B.R. 793 (Bankr. 1987); *In re Gunn*, 37 B.R. 432 (Bankr.1984); *In re Canda*, 33 B.R. 75 (Bankr.1983). If "cause" under § 1322(c) were construed to mean something that would benefit creditors, then all plans would be required to either pay 100% or to continue for at least 5 years. Such a construction would render superfluous the words used by Congress in § 1322(c).

As a matter of simple logic, one must conclude that a debtor may propose a plan that exceeds 3 years if he finds some benefit in doing so but that creditors may not force a debtor to do so. It is illogical to attempt to find some indication of bad faith when a debtor fails to exercise an option granted to him because he perceives no benefit in its exercise.

The rules of statutory construction include the axiom that specific statutory provisions control over general ones. In this context, it is inappropriate to ignore the specific provisions of the statute [here, § 1322(c) dealing with plan duration] by relying on the general provisions of § 1325(a)(3) [good faith]. It is inappropriate for the court to attempt to alter the drafters' intent in enacting § 1322(c) by considering this issue under the guise of the good faith requirement of § 1325(a)(3).

4. "Accuracy of plan statements, percentage of repayment, [sic regarding placement of comma] of unscheduled [sic regarding use of word "unscheduled" versus "scheduled" or "unsecured"] debt, attempts to mislead the court."

a. Accuracy of plan statements—When counsel for the creditor uses the term "plan" the court assumes that the creditor is referring to the "Chapter 13 Plan Dated 6/14/93" and not some other document filed by the debtors. The creditor has pointed to no misstatements in the plan and the court is not aware of any.

b. Percentage of repayment of scheduled/unsecured debt—The percentage repayment of scheduled or unsecured debt is de-

pendent upon the class of creditors in question. There are 4 classes of creditors in the debtors' plan: Administrative claimants, creditors holding allowed secured claims, creditors holding allowed unsecured claims entitled to priority and creditors holding allowed unsecured claims not entitled to priority. The allowed administrative and priority claims will be paid 100% in accordance with paragraphs 2(a) and (c) of the plan. The allowed secured claims will be paid in full including interest at 12% per annum according to ¶ 2(b) the debtors' plan. The allowed unsecured claims that are not entitled to priority will be paid 0% according to ¶ 2(d) of the plan. Thus, 3 of the 4 classes of creditors will be paid in full.

As discussed above, this court agrees with Collier's on Bankruptcy which notes that, since the amendments to the Code in 1984 which added the disposable income test of § 1325(b), the dividend to unsecured creditors is no longer an issue under the good faith requirement.

c. Attempts to mislead the court—The court finds that the debtors' schedules contained inaccuracies and errors that were not the result of intentional attempts to mislead the court or creditors. The court is convinced from the testimony of Candi Coburn that the debtors' were not aware of the correct amount of their income because of the periods of unemployment suffered by both debtors.

The debtors' failure to obtain approval to incur credit in their previous chapter 13 case resulted from a lack of understanding as to their obligations in that regard rather than an intentional violation of the order of confirmation. The items purchased were necessary household furniture items and, given the debtor's testimony, had approval been sought, it would have been granted.

The debtor's decision to incur debt for medical treatments was also reasonable and necessary and does not indicate an effort to mislead the court. The debtor's testimony at the hearing before the court and in the deposition about the children's clothing budget seems mostly consistent. Any inconsistencies appear to be minor and, in some cases, the result of statements made in anger or frustration during the deposition rather than efforts to mislead. Finally, the debtor's failure to correctly recall the precise amount of her husband's reinstatement pay does not seem to the court to be an attempt to mislead but rather an understandable inability to recall numerical data with precision.

In this regard, the court had the opportunity to view the witness testify under oath. The court's impression was that Candi Coburn testified honestly to the best of her ability and satisfactorily explained the errors in the schedules. Without reiterating her testimony, it appeared to the court that there was confusion in everyone's mind about several aspects of the numerical data, most particularly the earnings of the debtors. In the court's bankruptcy judicial experience over a 36 year period, this lack of specific financial information and knowledge is not uncommon and, in this case, does not amount to an attempt to mislead the court.

5. "Preferential treatment between classes"—The treatment of the classes of creditors was discussed in #3 above. Section 1322(b)(1) deals with the proper classification of claims and the appropriateness of discriminating among the classes. The plan in this case does not violate section 1322(b)(1). As indicated above, it is inappropriate to avoid the statutory standards for classification imposed under § 1322(b)(1) by imposing some other standard under the good faith requirements of § 1325(a)(3).

6. "The extent to which secured debt is modified"—Here, the creditor does not appear to contend that this test would have any relevance in this case since the creditor asks that a finding be made "That secured debt is not modified." If the plan sought to modify the rights of a holder of an allowed secured claim, one wonders what relevance this has to the present inquiry. The Code clearly permits the modification of secured claims in chapter 13 and other chapters. Why would one find bad faith in the debtor's actions if he availed himself of his rights under the Code?

This court has repeatedly pointed out in various contexts that it cannot be an indication of bad faith that one takes advantage of a law that was passed for his benefit. An apt

example from another field of law is the case of the cash basis taxpayer who intentionally pays as many deductible expenses as possible on the last day of a tax year in order to minimize his tax liability for that year. Surely, no one would contend that such conduct is an unlawful evasion of taxes, fraudulent, immoral or done in bad faith.

It is no more improper for a debtor to propose a chapter 13 plan that contains lawful provisions that will benefit the debtor than it is for a taxpayer to structure his finances to minimize his tax obligations.

Those who feel it is improper for a debtor to avail himself of his rights under the Bankruptcy Code should heed this court's oft-stated advice: "Write to your Congress person." Courts are not legislative bodies. This author refuses to intentionally violate his oath of office by ignoring the U.S. Constitution. A federal judge's duty is to uphold the United States Constitution and the laws passed thereunder. Our constitutional government relies on the checks and balances of the separation of powers doctrine. If a federal judge ignores the plain intent of Congress, he engages in judicial legislation. This author has avoided that temptation for over 3 decades and believes it is his duty to continue to do so in this case.

The proper role of a judge in questions of statutory construction was well explained by Judge Diarmond O'Scannlain in his concurring opinion in the case of *In re Beezley,* 994 F.2d 1433 (9th Cir.1993). In that case, Judge O'Scannlain wrote:

"It cannot be overemphasized that we deal here with matters that are absolutely fundamental to the integrity of the Bankruptcy Code: the balance struck between the rights of creditors on the one hand, and the policy of affording the debtor a fresh start on the other. How to strike that balance is an inordinately difficult question—a question of public policy—as to which reasonable minds may and quite frequently do differ. Our task is, perhaps, a relatively easier one, for which we have only to apply the law as Congress has written it. What Congress deemed a proper balancing of the equities between debtor and creditor with respect to unlist-

ed debts it has enacted in section 523(a)(3) of the Bankruptcy Code. It is not for the courts to restrike that balance according to their own lights." *Id.*

7. "Type of debt discharged"—The debt to this creditor would not be dischargeable in chapter 7 if the creditor filed a timely and appropriate complaint objecting to the discharge of this debt. Although many published opinions include this factor as one indicating bad faith, this court finds this factor of little help. It is clear from reading § 1328(a) and § 523 that certain debts that would be non-dischargeable in chapter 7 are dischargeable in chapter 13. Thus, as discussed above, it cannot be an indication of bad faith for a debtor to take advantage of a law passed for his benefit.

This court understands that many creditors do not agree with the discharge provisions of § 1328(a). As mentioned above, those creditors should do what other groups have done and seek to have Congress change the law. Several groups have been successful in convincing Congress to do just that. Witness the additions to the nondischargeable debts added by amendments to § 1328 after is was adopted in 1978.

For example, a judgment for certain damages resulting from the debtor's unlawful operation of a vehicle while intoxicated is now non-dischargeable (although it is still possible for a debtor to discharge a judgment for intentionally committing vehicular homicide). See § 1328(a)(2). Also, it is now much more difficult for a debtor to discharge an educational debt owed to a governmental unit even though the debt was incurred by the debtor in an effort to improve his lot in life (although a debtor can discharge a claim for embezzlement). See § 1328(a)(2).

8. "Special circumstances"—The creditor's attorney writes: "There have been no special circumstances during the course of the Coburn bankruptcy."

9. "The frequency with which debtor has sought relief under the bankruptcy rules"—The debtors have sought relief under chapter 13 of the Bankruptcy Code once before. They did not receive a discharge in their prior case since it was voluntarily dismissed

by the debtors. The reason for the dismissal was not raised as an issue.

It is difficult for the court to make any use of this fact. The Code specifies in § 109(g) the circumstances under which a debtor is barred from serial filings. The creditor does not contend that § 109(g) was violated and this court declines to speculate as to why the debtors dismissed the prior case.

10. "Motivation and Sincerity of the debtor"—It appears that the debtors' primary motive is to retain certain assets and discharge their dischargeable debts under the Bankruptcy Code. It also appears that the debtors are sincere in this motive. Since the Bankruptcy Code specifically provides for retention of assets and a discharge of certain debts in chapter 13 cases, it is difficult to understand why this motive is relevant to the good faith inquiry.

The creditor's use of "motivation and sincerity" appears to be merely another way of saying that the debtors have acted in "bad faith" by attempting to mislead the court or abuse the bankruptcy process. While this court agrees that such attempts would constitute bad faith if they occurred, it does not believe that the rubric "motivation and sincerity" is particularly helpful. As discussed above, the court finds that the debtors have not attempted to mislead the court or abuse the process.

The court again agrees with an observation from Collier's on Bankruptcy:

"Only where there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith." Collier on Bankruptcy, ¶ 1325.04[3], p. 1325–20 (15th Ed.).

The court cannot make such a finding in this case.

11. "Burden of plan on trustee"—The court finds that this plan will impose the same burden on the standing chapter 13 trustee as all other chapter 13 plans that are confirmed. Specifically, the trustee will monitor the debtor's progress and seek to have the case dismissed if the payments are not made. If the payments are made, the trustee will disburse the funds in accordance with the plan and then file a final account. The trustee has not objected to confirmation of this plan. This court does not see any logical connection between the trustee's duties in administering this routine chapter 13 plan and the debtors' alleged bad faith.

■ B. Disposable Income—Based on the testimony of the witnesses and the evidence adduced at the hearing, the court makes the following findings of fact on the creditor's objections to the debtors' budget. The court will rely on the figures in the amended schedules I and J from the debtors' hearing exhibit B.

1. The debtors have correctly projected their combined monthly net income as $3,820 in the amended schedules produced at the hearing.

2. The debtors' budgeted expense of $1,096 monthly for shelter (rent and utilities) for a family of five people is reasonable.

3. The debtors' food budget of $773 monthly is excessive. A reasonable sum given the number of people, their ages and their apparently unusually large size would be $650 monthly.

4. The debtors' clothing and cleaning budget of $353 is excessive. A reasonable sum given the factors mentioned in # 3 above would be $200 monthly.

5. The debtors' medical expense budget of $90 monthly is reasonable.

6. The debtors' transportation budget of $290 is reasonable.

7. The debtors' budgeted expenses for recreation including children's allowances and day care, union dues and school activities of $696 is excessive. A reasonable sum would be $428. The child care and union dues budget of $250 and $34 monthly are reasonable. A $100 monthly allowance for the three children is sufficient. This court believes that it is appropriate for the parents to pay $44 monthly for the various sporting and other extra-curricular activities to benefit the three minor children. The court does not believe that a chapter 13 debtor must deny his children the privilege of participating in such activities. It is unfortunate that public schools can no longer afford to offer such activities at little or no cost. Further, the

debtor testified that some of the children are unusually talented athletes who may enjoy college scholarships if they are allowed to participate in these extra-curricular activities. This testimony was not refuted.

8. The debtors' life, auto and renter's monthly insurance expenses of $30, $142 and $20, respectively are reasonable.

■ After taking these changes into account, it appears the debtors' monthly expenses total $2784, leaving disposable income of $1036 monthly. If the debtors paid this sum to the trustee for a period of 36 months as required by § 1322(c) and § 1325(b), the total paid into the plan would be $37,296. The amount proposed to be paid into the present plan is $22,126 ($481 × 46 months). Thus, the court will not confirm the present plan or any plan that does not propose to pay to the trustee at least $37,296 over its life. For example, if an amended plan were filed which called for monthly payments to the trustee of $622 for 60 months, it would meet this requirement.

Conclusions of Law

1. The debtors' plan was proposed in good faith.

2. The debtors' plan does not commit all of the disposable income for a period of 36 months.

■ In summary, while the court does not find that the debtors' budget is reasonable in all respects, it does not believe the debtors attempted to mislead anyone in filing the plan or its supporting documents. It is important to note that there was no evidence that the debtors did not historically spend the amounts they now claim in their projections. The issue raised by the creditor was simply whether the amounts projected in the budget were reasonable. While an intentionally inflated expense budget or intentionally deflated income statement would be grounds for dismissal for cause under § 1307, the court does not find that either occurred in this case. Rather, the income was difficult to project accurately because of poor record-keeping and the wife's seasonal employment and the expense items that were adjusted

downward herein were all items that reasonable people could differ about.

The court will enter an order setting aside the order confirming the plan and granting the debtors 28 days to file an amended plan in accordance with this opinion.