**In re Gloria A. FURLOW, Debtor.**

**Bankruptcy No. 86–04640S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 17, 1987.

James T. Watkins, Philadelphia, Pa., for CoreStates.

Alan K. Marshall, Philadelphia, Pa., for debtor.

James J. O'Connell, Philadelphia, Pa., Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant case presents us with an opportunity to consider another of the recurrent issues surrounding the confirmation of Chapter 13 Plans, one of which, the "good faith" requirement of 11 U.S.C. § 1325(a)(3), we addressed in *In re Gathright*, 67 B.R. 384 (Bankr.E.D.Pa.1986), *application for appeal denied*, 71 B.R. 343 (E.D.Pa.1987). At issue here is the "equal treatment" requirement, set forth in 11 U.S.C. §§ 1322(a)(3) and (b)(1). After consideration of the tests established in the reported cases, we hold that the Chapter 13 Debtor may satisfy the "equal treatment" requirement by meeting his or her burden of proving that there is a reasonable basis for the degree of any different and hence "unequal treatment" of different claims in his or her Plan. We do not believe that the Debtor in the case before us has met this burden, and therefore we are not prepared to confirm her Plan on the present record. We will, however, allow her to attempt to do so at a continued Confirmation Hearing unless she opts to amend her Plan to treat all of her unsecured creditors the same.

The Debtor, GLORIA A. FURLOW, a Philadelphia school teacher, filed a Petition pursuant to Chapter 13 of Title 11, U.S. Code, on October 6, 1986. Among her debts listed were secured obligations to two (2) companies who had mortgages on her residence and a local bank on an auto loan; an unsecured educational loan of $7,600.00; and numerous other unsecured debts, among which was an obligation owing to the predecessor of CoreStates Bank of Delaware (hereinafter referred to as "CoreStates") on a credit card. Simultaneously with the filing of her Petition, the Debtor filed her Plan, which contemplated paying forty (40%) percent of her educational loan and ten (10%) percent of all of her other unsecured debts; including that to CoreStates. The two (2) mortgages and the auto loan were to be paid outside of the Plan, in the manner sanctioned by this Court in *In re Evans*, 66 B.R. 506, 509–10 (Bankr.E.D.Pa.1986).

On November 25, 1986, CoreStates filed an Objection to Confirmation of the Debtor's Plan, contending that the Plan violated the "equal treatment" requirements of the Code due to its different treatment of the educational loans, as opposed to the other unsecured debts. This Objection was pressed by CoreStates at the Confirmation Hearing on February 17, 1987.

Neither party offered to present any testimony at the hearing. The Court therefore entered an Order requiring both parties to file Briefs on the issue on or before March 3, 1987, on the basis of the sparse existing record. They did, on March 4, 1987, enhance the record recited above slightly with a Stipulation of Facts which provides, *inter alia*, that the educational

loan does not include a co-signer and would be non-dischargeable in a Chapter 7 case.

At the outset, we must reiterate what we observed at the hearing on February 17, 1987, regarding the impact of the *Gathright* decision upon the issue presented by the instant case. The Plan in question, as far as we can tell, was devised to appease the educational lender, apparently out of the Debtor's concern that, if not given some favored treatment, the educational lender would object to confirmation of the Plan, most probably on the ground that the Plan was not proposed in "good faith," as required by 11 U.S.C. § 1325(a)(3). However, in light of *Gathright*, it would seem that this concern of the Debtor would be unfounded and that there would be no need for her to file a Plan which treated the educational lender more favorably than other unsecured creditors. CoreStates, quite naturally, objects to the favored treatment given to the educational lender which reduces, quite substantially, the portion of the Debtor's payments to the Trustee which will be distributed to it. The fact that the Debtor has, up to this point, never satisfactorily answered the question as to why, in light of *Gathright*, she still desires to provide favored treatment to the educational lender, ultimately leads us to refuse to confirm her Plan on the basis of the present record.

The pertinent Code provisions regarding "egual treatment," 11 U.S.C. §§ 1322(a)(3) and (b)(1), read as follows:

(a) The plan shall— ...

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of a debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims; ...

We note that there was one significant change effected in these sections by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (hereinafter referred to as "BAFJA"): the addition of the last clause in § 1322(b)(1) expressly allowing the Debtor to treat claims on which there is a co-obligor differently from other debts.

At the outset, we must comment upon the contrast in the quality of authority addressing the "equal treatment" issue as opposed to that addressing the "good faith" issue in question in *Gathright*. While, in *Gathright*, we commented, in reference to § 1325(a)(3), that "no provision of the Code has been so widely construed as has been this section," 67 B.R. at 387, and we had decisions from almost every Court of Appeals, including our own, to consider, here we are constrained to observe that only one Court of Appeals appears to have addressed the issue, and that only in passing. Thus, the vast majority of what few decisions exist were rendered by bankruptcy courts, and no decisions on point appear to have emanated from not only this Court, but from any of the bankruptcy courts in the Third Circuit.

We also observe that there is a wide spectrum of interpretations of the significance and scope of the "equal treatment" requirement, and Collier, which was a primary source in the formulation of our views on the "good faith" requirement, is uncharacteristically non-committal about the proper interpretation of the "equal treatment" requirement. At the outset of its discussion, that text states that "[t]he courts have not been entirely consistent in construing the prohibition against unfair discrimination." 5 COLLIER ON BANKRUPTCY, ¶ 1322.05, at 1322—8 (15th ed. 1986). This passage, represents, if anything, an understatement, and Collier's subsequent discussion does little to further consistency in this area in the future.

The spectrum of decisions is very wide. The highwater mark for permissiveness is

the decision in *In re Sutherland*, 3 B.R. 420 (Bankr.W.D.Ark.1980). In confirming a Plan in which the debtor proposed to pay unsecured creditors classified as "medical debts," unsecured notes "from banks needed," and credit accounts "desired to be kept for continuation of doing business," and nothing at all to other unsecured creditors, the court stated that it "does not believe there can be an unfair discrimination against any class of unsecured creditors when unsecured creditors would not receive anything in the event of liquidation in a Chapter 7." *Id.* at 422. This reasoning, which, except for possibly debts which would be non-dischargeable in a Chapter 7, practically writes §§ 1322(a)(3) and (b)(1) out of the Code, is cited as an extreme by many courts but is, as far as we can determine, followed in its explicit reasoning by none.

On the other hand, until the BAFJA amendments, several courts refused to allow debts involving co-obligors to be treated differently, a distinction which Congress probably initially considered permissible and hence expressly sanctioned in the amendments. *See Barnes v. Whelan*, 689 F.2d 193, 200–02 (D.C.Cir.1983); *In re Cook*, 26 B.R. 187 (D.N.M.1982); *In re Girardeau*, 35 B.R. 9 (Bankr.D.S.C.1983); and *In re Moore*, 31 B.R. 12 (Bankr.D.S.C. 1983). *Contra: In re Perkins*, 55 B.R. 422 (Bankr.N.D.Okla.1985); and *In re Kovich*, 4 B.R. 403 (Bankr.W.D.Mich.1980).

Similar inconsistencies in determining whether certain disparate treatment of creditors is permissible abound. In *In re Stewart*, 52 B.R. 281 (Bankr.W.D.N.Y. 1985); and *In re Bowles*, 48 B.R. 502 (Bankr.E.D.Va.1985), the courts refused to allow support obligations to be classified differently than other obligations, despite the total non-dischargeability of such obligations and an obvious and unique threat of jail to the non-paying debtor. *Contra: In re Haag*, 3 B.R. 649 (Bankr.D.Ore.1980); and *In re Curtis*, 2 B.R. 43 (Bankr.W.D. Mo.1979). Noteworthy of mention in this discussion is *In re Harris*, 62 B.R. 391 (Bankr.E.D.Mich.1986), which looks askance at the result in *Stewart* and

*Bowles* with the observation that "this [discrimination] would likely inure to the benefit of the 'lesser' class, because they might receive nothing if the debtor goes to jail," *id.* at 395; nevertheless, the *Harris* court proceeds to disallow discrimination against "business" as opposed to "consumer" debts. *Accord: In re Wolff*, 22 B.R. 510 (9th Cir.Bankr.App.1982) (favored treatment of insurer and business supplier disapproved); and *In re Dzeidzic*, 9 B.R. 424 (Bankr.S.D.Tex.1981) (policeman not permitted to favor credit union despite allegations of potential physical harm for failure to do so). *But see In re Ratledge*, 31 B.R. 897 (Bankr.E.D.Tenn.1983) (favored treatment of medical bills and store bills permitted).

Only three (3) cases which we could locate involved discrimination in treatment of educational loans. *In re Freshley*, 69 B.R. 96 (Bankr.N.D.Ga.1987); *In re Gibson*, 45 B.R. 783 (Bankr.N.D.Ga.1985); and *In re Gunn*, 37 B.R. 432 (Bankr.D.Ore. 1984). In *Gibson* and *Gunn*, however, the respective debtors proposed exactly the opposite of what the Debtor here proposed, i.e., the debtors there sought to discriminate *against* educational lenders, and the courts prevented them from doing so. It therefore appears that the intention of the Debtor here to give favored treatment to educational loans is preceded only by the *Freshley* case. In that case, the debtor was permitted to pay one hundred (100%) percent of his student loan, and but one (1%) percent to his other secured creditors. The reasons advanced were (1) that such loans were nondischargeable in Chapter 7, per § 523(a)(8); and (2) that payment of such loans was necessary to the debtor to obtain further loans and finish his education.

Because of our position in *Gathright*, which has not been challenged in any other cases and is no longer on appeal, we cannot agree that the first reason makes any logical sense. In the contest of the *Freshley* decision, which alludes to the laundry-list "good faith" test set forth in *In re Kitch-*

*ens,* 702 F.2d 885 (11th Cir.1983), that we declined to apply in light of the BAFJA Amendments in *Gathright,* this reasoning makes eminently more sense than it would in our Court. The second reason might, if applicable here, justify the discrimination sought, as we indicate below. However, the Debtor has advanced no such argument thus far.

Several courts, most notably the *Wolff* decision, have taken it upon themselves to fashion the inevitable "test" of "factors" to be weighed in determining whether certain discrimination is "reasonable" and hence permissible. The four (4) "factors" cited by *Wolff,* 22 B.R. at 512, are as follows:

> (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

This four-prong test has been adopted by courts reaching such varying results as those in *Harris,* 62 B.R. at 394; *Perkins,* 55 B.R. at 426; *Gibson,* 45 B.R. at 788; and *Ratledge,* 31 B.R. at 899. In *Cook,* the court suggests that consideration of the Chapter 13 policies of providing the debtor with a "fresh start" should also enter the equation. 26 B.R. at 190. In *Stewart,* the court seems very impressed with Congress's making the distinction in debts where there are co-obligors, suggesting that any other distinctions which are thus expressly not sanctions are impermissible. 52 B.R. at 283.

We feel about as enthusiastic about some of the prongs of the *Wolff* "tests" as we expressed, in *Gathright,* that we felt about many of the items on the laundry-lists which some courts have developed for ascertainment of "good faith," i.e., many of the "tests" are irrelevant or difficult to comprehend. The third *Wolff* factor, whether the discrimination is proposed in "good faith," suggests that the good-faith laundry list should be incorporated into the analysis of "equal treatment." We do not

think that a separate § 1325(a)(3) analysis has any place in a §§ 1322(a)(3) and (b)(1) analysis, especially since the test for "good faith" has itself already picked up such excessive baggage. To bring all of these factors into the analysis of an "equal treatment" question is to invite a long and complex opinion, with a maximum of inappropriate subjective analysis. *See In re Sellers,* 33 B.R. 854, 857–60 (Bankr.D.Colo. 1983); and *In re Tauscher,* 26 B.R. 99, 102–03 (Bankr.E.D.Wis.1982).

We also have difficulty comprehending and hence applying the second *Wolff* factor. The issue of whether the debtor can produce a confirmable Plan without discrimination measures only whether the debtor belongs in Chapter 13; necessity cannot justify otherwise impermissible discrimination. On the other hand, it should not be necessary for the debtor to establish that every form of different treatment of claims is a matter of life or death for the Plan. The fresh start policy of Chapter 13 suggests that some flexibility, due to no other factor than the debtor's proof of a rational basis for so doing, is justified.

We do agree that the first and fourth prongs of the *Wolff* test, i.e., whether the discrimination is reasonable and whether the degree of discrimination is appropriate, are very relevant to the formulation of what we will ultimately establish as the appropriate "test" for determining when the "equal treatment" requirement under §§ 1322(a)(3) and (b)(1) is met by a Plan proponent.

However, before formulating our own test, we do consider it appropriate to also discuss the issue of burden of proof on this issue, which the *Wolff* court also addresses. 22 B.R. at 512. We agree totally with the *Wolff* court and several of the other decisions cited *supra, e.g., Gibson, Girardeau,* and *Moore, supra,* that the debtor has the burden of proving the rationale for any discrimination proposed. In *Gathright,* while expressly declining to discuss the issue burden of proof on the requirements for satisfaction of the elements for Plan confirmation directly, 67 B.R. at

391–92 n. 8, we implicitly held that, if a party in interest raises a certain objection to confirmation, then the debtor has the burden of proving that the disputed element is satisfied in the proffered Plan. We believe this result to be not inconsistent with that ultimately reached by our brother, Judge Fox, in *In re Fries*, 68 B.R. 676, 683–85 (Bankr.E.D.Pa.1986), where it is concluded that the creditor has the initial burden of raising a § 1325(b)(1) bar to confirmation, but that the debtor has the ultimate burden of persuasion on this issue once it is raised.

■ From the foregoing, we therefore formulate the following test for determining whether "equal treatment," per §§ 1322(a)(3) and (b)(1), is lacking in a Plan: different treatment is permissible if and only if the debtor is able to prove a reasonable basis for the degree of discrimination contemplated by the Plan.

■ Although this is a relatively liberal test, in that, while it rejects the *Sutherland* analysis, it would quite possibly lead to a different result in such cases as *Harris, Stewart, Bowles,* and *Dzeidzic,* it is rather plain that the Debtor here has, on its record, failed it, as much as we hate to so inform a school teacher. She has presented no reasonable basis whatsoever on this record for treating her educational loan different from her other unsecured debts. Certainly, after *Gathright,* there is no obvious basis to treat an educational loan more favorably, as we quite clearly held there that "the fact that the Debtor proposes to discharge a debt non-dischargeable in a Chapter 7 case, specifically a student loan obligation otherwise non-dischargeable per 11 U.S.C. § 523(a)(8), is irrelevant to resolution of whether the Debtor has proceeded 'in good faith,' ..." 67 B.R. at 385. Nor does the Debtor's counsel in his Brief, suggest any basis which we would consider reasonable for the presence of this aspect of the Debtor's Plan.

We can conceive of the possibility of some such reasonable basis, such as the second reason presented to the Court by the debtor in *Freshley, supra.* For example, the Debtor's remaining in good standing on her educational loan *may* be necessary to participate in continuing education which she must attain to retain her position as a school teacher. This element, if proven, could be a reasonable basis for discrimination similar to that proposed by the Debtor. However, on this record, such a finding would be purely speculation.

■ We recognize that guidance in this district on meeting the "equal treatment" requirement of the Code has been thus far absent, and that the test which we have formulated differs at least slightly from those utilized in any reported cases to date. For this reason, we are inclined to give the Debtor a further opportunity to meet her burden under §§ 1322(a)(3) and (b)(1) by the employment of the test developed herein if she is able to do so. If not, we presume that her counsel, enlightened by this Opinion, will amend her Plan.

We note that, in our Order of February 17, 1987, we continued the hearing on the Trustee's Motion to Dismiss this case, on the ground of feasibility, until April 15, 1987. We are forced to reschedule this hearing in any event due to our unavailability on that date, and we have decided to accord the Debtor an opportunity to amend her Plan in light of this Opinion and to resolve the feasibility problem in sufficient time so that we may consider Confirmation of any Amended Plan and/or testimony on the issue of whether the Debtor meets the "equal treatment" test as set forth herein on the same date as the rescheduled hearing.

An appropriate Order so providing shall be entered.

## ORDER

AND NOW, this 17th day of March, 1987, after consideration of the record in this case and the Briefs sur the Objection To Confirmation of the Debtor's Plan and Motion To Dismiss filed on behalf of CoreStates Bank of Delaware N.A., and the Debtor's Answer thereto, it is ORDERED as follows:

1. Confirmation of the Debtor's Plan is DENIED, without prejudice, on the record before us, in light of the failure of the Debtor to establish that her Plan is in conformity with 11 U.S.C. §§ 1322(a)(3) and (b)(1).

2. If the Debtor chooses to amend her Plan in light of the within Opinion, she shall file such an Amended Plan and serve same upon all interested parties on or before March 26, 1987.

3. A hearing on the Confirmation of the Debtor's original Plan, at which she must be prepared to testify personally in support of same, or, alternatively, to consider any Amended Plan filed by her, and any Objections thereto, and a hearing on the Trustee's Motion to Dismiss this case on the ground that the Debtor's Plan is not feasible shall be scheduled on

WEDNESDAY, APRIL 22, 1987, at 10:00 A.M. in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.