**In re B & G FARMS, INC., Debtor.**

**Bankruptcy No. 86–20767.**

United States Bankruptcy Court, D. Montana.

Feb. 12, 1988.

J. David Penwell, Bozeman, Mont., for debtor.

John C. Brown, Bozeman, Mont., for Massey Ferguson.

Peter S. Lineberger, Bozeman, Mont., for Bank.

J. Richard Orizotti, Butte, Mont., for Navistar.

Court E. Ball, Billings, Mont., for Beneficial Mortg.

Dunlap and Caughlan, Butte, Mont., trustee.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

Brought for hearing on February 9, 1988, was the Motion of the Debtor to Amend its Chapter 12 Plan. The Debtor's Plan was confirmed on June 15, 1987. In the Debtor's Motion to Amend its Chapter 12 Plan, the Debtor moved to amend four separate areas as follows:

(1) Add the Empire Federal Savings and Loan as a creditor;

(2) Delete Navistar as a creditor;

(3) Delete Massey Ferguson as a creditor; and

(4) Pay all unsecured creditors out of the available net disposable income.

On January 27, a stipulation between the Debtor and Empire Federal Savings was

approved by this Court, and the Debtor and Navistar have reached an agreement. Accordingly, those two matters have been resolved. This Court finds that the Debtor's Motion to Amend the Chapter 12 Plan to pay all unsecured creditors out of the available net disposable income is allowed under 11 U.S.C. § 1229(a)(1), and, therefore, the only issue remaining before the Court is whether the Debtor may delete Massey Ferguson as a creditor.

In the Debtor's confirmed Chapter 12 Plan, creditors Massey Ferguson and CIT Group are classified together under Class IV: New Machinery. The Debtor proposes to return Massey Ferguson's 1984 Tractor and make payments to the CIT Group as scheduled in the Plan. Massey Ferguson argues that § 1222(a)(3) prohibits the Debtor from treating its debt any differently than the debt of CIT Group. Section 1222(a)(3) states:

> "(a) The Plan shall—
>
>   (3) if the plan classifies claims and interests, provide the same treatment for each claim or interest within a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment."

Case law available on this issue is virtually non-existent. However, § 1222(a)(3) is identical to § 1322(a)(3) and case law does exist under that chapter which is pertinent to this case. As discussed by the Court in *In re Furlow*, 70 B.R. 973 (Bankr.E.D.Pa. 1987), case law on § 1322 varies greatly within, as well as between, jurisdictions. The court in *Furlow* explains the extreme difference between *In re Sutherland*, 3 B.R. 420 (Bankr.W.D.Ark.1980) (which practically wrote § 1322(a)(3) and (b)(1) out of the Code) and *Barnes v. Whelan*, 689 F.2d 193 (D.C.Cir.1983); *In re Girardeau*, 35 B.R. 9 (Bankr.D.S.C.1983); *In re Cook*, 26 B.R. 167 (Bankr.N.M.1982); and *In re Moore*, 31 B.R. 12 (Bankr.D.S.C.1983), (all of which refused to allow debts involving co-obligors to be treated differently). The *Furlow* court further addressed the lack of a set rule in "equal treatment" under § 1322(a)(3) by stating the obvious:

> "We also observe that there is a wide spectrum of interpretations of the significance and scope of the 'equal treatment' requirement, and Collier, which was a primary source in the formulation of our views on the 'good faith' requirement, is uncharacteristically non-committal about the proper interpretation of the 'equal treatment' requirement. At the outset of its discussion, that text states that '[t]he courts have not been entirely consistent in constructing the prohibition against unfair discrimination'. 5 *Collier on Bankruptcy*, § 1322.05, at 1322–8 (15th ed. 1986). This passage, represents, if anything, an understatement, and Collier's subsequent discussion does little to further consistency in this area in the future ...
>
> Similar inconsistencies in determining whether certain disparate treatment of creditors is permissible abound. In *In re Stewart*, 52 B.R. 281 (Bankr.W.D.N.Y. 1985); and *In re Bowles*, 48 B.R. 502 (Bankr.E.D.Va.1985), the courts refused to allow support obligations to be classified differently than other obligations, despite the total non-dischargeability of such obligations and an obvious and unique threat of jail to the non-paying debtor. *Contra: In re Haag*, 3 B.R. 649 (Bankr.D.Ore.1980); and *In re Curtis*, 2 B.R. 43 (Bankr.W.D.Mo.1979). Noteworthy of mention in this discussion is *In re Harris*, 62 B.R. 391 (Bankr.E.D.Mich. 1986), which looks askance at the result in *Stewart* and *Bowles* with the observation that 'this [discrimination] would likely inure to the benefit of the "lesser" class, because they might receive nothing if the debtor goes to jail,' *id.* at 395; nevertheless, the *Harris* court proceeds to disallow discrimination against 'business' as opposed to 'consumer' debts." *Id.* at 975–6.

*Furlow* then rationalized through the Ninth Circuit Bankruptcy Appellate Panel decision in *In re Wolff*, 22 B.R. 510 (BAP 9th Cir.1982), and adopted the following test:

> "Different treatment is permissible if and only if the debtor is able to prove a reasonable basis for the degree of dis-

crimination contemplated by the Plan." *Furlow,* supra, at 978.

The Court in *Wolff* set forth four criteria to determine if the discrimination is reasonable and hence permissible. The factors cited by *Wolff* were:

"(1) Whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination." *Wolff,* supra, at 512.

In this case the Debtor credibly explained the reasons behind the Motion to Amend the treatment of Massey Ferguson. It is critical not to overlook that the modification deals solely with the method of payment of the claim by return of the collateral. The Debtor stated that without the amendment, it would not be able to carry out the Plan. Counsel for Massey Ferguson stated that although they felt the valuation of $20,000.00 on the tractor as of December 23, 1987, was correct, they now felt it was worth considerably less than that, but offered no evidence to support such position. The Debtor's president testified that he had put new tires on the tractor so he felt it was worth at least the $20,000.00 valuation. This Court finds that the tractor is properly valued at $20,000.00 and return of the tractor to Massey Ferguson will pay such claim in full. Upon review of the record, this Court finds that the Debtor has met the four pronged *Wolff* test and the *Furlow* test, and as such the Debtor's treatment of Massey Ferguson is permissible.

IT IS ORDERED that the Debtor's Motion to Amend its Chapter 12 Plan is granted in accordance with this Order.