**In re Robert S. FOSTER, Nancy C. Foster d/b/a B–N Ranch, Debtors.**

**Bankruptcy No. 87–20125.**

United States Bankruptcy Court, D. Montana.

April 12, 1988.

William L. Madden, Jr., Bozeman, Mont., for debtors.

W. Arthur Graham, Missoula, Mont., for Federal Land Bank of Spokane.

Court E. Ball, Billings, Mont., for Beneficial Mortgage.

J. David Penwell, Bozeman, Mont., for Slingsby.

Dunlap and Caughlan, Butte, Mont., trustee.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 12 case, after an initial hearing on the Debtors' First Plan,

the Court on November 5, 1987, denied confirmation after fixing valuation of the assets, market rate of interest and term of repayment of secured creditors, *In re, Foster*, 79 B.R. 488, 5 Mont.B.R. 108 (Bankr. Mont.1987). The Debtors on November 16, 1987, filed an Amended Plan to conform to the Order of November 5, 1987, and hearing on the Plan, together with objections filed by Federal Land Bank of Spokane (FLB), Trustee, Beneficial Mortgage Co. and Slingsby was held on December 3, 1987. The Debtors have filed modifications to the Amended Plan on November 25, December 2, 1987 and December 3, 1987. The amendment to the Second Plan made on November 25, 1987, changed the amount proposed to be paid unsecured creditors from $65,946.39 to $16,468.39 on the basis that the Debtors are committing to the Plan all net disposable income under 11 U.S.C. 1225(b)(1). The other two amendments increased the claims of FLB and Beneficial to $18,030.70 and $80,980.00, respectively, to include interest on each claim, to December 3, 1987. FLB objects that the amendment does not include attorney fees as well as the interest under § 506(b). Objections by Slingsby contest the Court's finding of valuation on the real property and the term of repayment. With regard to objections on valuation, term of repayment and interest rates, which are not only the basis of objections to the Plan but motions for reconsideration, I reaffirm and adopt the applicable holding set forth in the opinion of November 5, 1987, as if it were fully set forth herein, and each objection on those grounds is rejected and denied. In addition, the objection of Slingsby that treatment of their claim is contrary to the Code, and that such claim should be treated as other secured creditors is rejected on the grounds that each secured creditor is treated differently within a class because their claims are in fact different. *See, In re B & G Farms, Inc.*, 82 B.R. 549, 5 Mont.B.R. 326 (Bankr.Mont.1988), interpreting § 1222(a)(3) (different treatment of classes is permissible as long as there is a reasonable basis for the degree of discrimination). Here, Slingsby, as opposed to other secured claims, is undersecured, and thus treatment of his claims has a reasonable basis for different treatment as to term and interest rate. *In re Foster*, 5 Mont.B.R. at 122–124. For the same reasons, the objections and motion of Beneficial to reconsider on the issue of term of repayment and interest rate is rejected. 5 Mont.B.R. at 124. All other objections by Beneficial have been resolved by the amendment to the Plan increasing the claim of Beneficial to $80,980.00, under circumstances where Beneficial has failed to file a proof of claim for attorney fees and costs incurred in this case.

■ As to the FLB objections, the issue regarding the award of attorney's fee to FLB pursuant to § 506(b) as part of its claim is contested by the Debtors on the basis that such fees are not due FLB under the terms of the promissory note and mortgage. Section 506(b) allows, in the case of an oversecured creditor, " * * * interest on such claim and any reasonable fees, costs or charges provided for under the agreement under which the claim arose". *United ed Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), which states at page 631:

> "Section 506(b) provides that '[t]o the *extent that* an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim'. (Emphasis added). Since this provision permits postpetition interest to be paid only out of the 'security cushion', the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest. *See* 11 U.S.C. § 502(b)(2)."

It is conceded FLB is oversecured, and to that end introduced evidence that it is obligated for costs advanced, attorney's fees, and expert witness fees of $4,847.61. Debtors do not question the reasonableness of such fees and costs, but seriously contend on authority of *In re Trombley*, 31 B.R. 386 (Bankr.Vt.1983), and *In re Roberts*, 20 B.R. 914 (Bankr.E.D.N.Y.1982), that the "agreement" between the parties

only allows for attorney's fees and costs "in case of suit hereon or foreclosure—", neither of which events have occurred, thereby eliminating any obligation on the part of the Debtors to pay fees and costs. The mortgage of FLB states:

"In case of any suit to foreclose this mortgage or to collect any charge growing out of the debt hereby secured, or any suit which the mortgagee may deem it necessary to prosecute or defend to effect or protect the lien hereof, the mortgagors agree to pay a reasonable sum as attorney's fees and all costs and legal expenses in connection with said suit, and further agree to pay the reasonable court costs of searching records and abstracting or insuring title; and such sums shall be secured hereby and included in the decree of foreclosure."

It is also conceded no foreclosure action or suit has been commenced by reason of the default under the mortgage. Therefore, argue the Debtors, FLB is entitled to attorney's fees and costs under 506(b) only in the case of suit to collect the sum due on the note, or foreclose the mortgage, and since neither event has occurred, the agreement does not provide for the recovery of attorney's fees and costs. By contrast, FLB says its activities in protecting its mortgage interest in this Chapter 12 case is included in the phrase "suit which the mortgagee may deem it necessary to * * * defend to effect or protect the lien". FLB relies on *Kohl v. United States*, 91 U.S. (1 Otto) 367, 375, 23 L.Ed. 449 (1875) which states:

"The term [suit] is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy which the law affords. The modes of proceeding may be various but, if a right is litigated in a court of justice, the proceeding by which the decision of the court is sought is a suit."

I agree with the creditor's position, not only on the basis of the *Kohl* decision, but also that the plain meaning of the words in the agreement allows attorney's fees and costs where the creditor is protecting its lienhold interest. Clearly, FLB has been thrust into this Chapter 12 case because the Debtors have sought to re-write the mortgage agreement, now in default, not only to the interest rate, but also term of repayment. Consequently, the actions by FLB to "defend" and "protect" its lien have been in a court of law, which is litigating under the Bankruptcy Code the adversary interests of the parties. *Roberts*, supra, and *Trombley*, supra, are inapposite on the facts. Neither case involved the broad language of the mortgage agreement involved in this case. A host of cases support this conclusion, and they are set forth in *In re Brunel*, 54 B.R. 462, 464 (Bankr.Colo.1985), (where fee provisions are broad, Bankruptcy Courts have allowed the recovery of attorney's fees, as long as the fees are reasonable). Therefore, the claim of FLB must be increased by an amount of attorney's fees and costs which were contemplated by the agreement and are reasonable. In that regard, *Brunel*, supra, at 465 holds:

"* * * courts have allowed fees, where the creditor acted prudently in seeking to protect its interest in the property."

In this case, FLB attorney's bill for professional services runs from 4/1/87 to 11/29/87, all of which are post-petition services and deal solely with this Chapter 12 case, including study of the Plan, research dealing with legal issues peculiar to the secured status of FLB, and attendance at court hearings on the Plan. I find each charge for the legal service was and is reasonable, not only to time and hourly charge, but necessary to protect the lienhold interest of FLB. Accordingly, I conclude the FLB claim for attorney fees and costs advanced in the sum of $3,030.89 must be allowed. I find no basis in the mortgage agreement for charges made by any expert witnesses employed by FLB on the interest rate issue, and those costs are denied.

 Under an amendment of November 25, 1987, the Debtors propose a significant reduction in the amount to be paid to unsecured creditors. Under the Amended Plan, the Debtors propose to pay $66,000.00 to unsecured creditors in cash and in kind

(through transfer of property to the Trustee for liquidation) during the three years of the Plan. By the amendment, and ostensibly relying on 1225(b)(1) as interpreted in *In re Fauth*, 79 B.R. 490, 5 Mont.B.R. 126 (Bankr.Mont.1987), the Debtors have deleted the payment in the third year of $49,-478.00. I conclude the amendment is inconsistent with Sections 1225(a)(3) and 1225(a)(4) of the Code, inconsistent with the Plan, inequitable to the unsecured creditors and smacks of lack of good faith.

Under Section 1225(a)(4), the Court shall confirm a Plan if:

"(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date."

Such provision adopts what is known as the "best interest of creditors" test which requires an unsecured creditor must receive value as of the effective date of the Plan which is not less than the amount which such creditor would receive if the estate were liquidated under Chapter 7. *In re Chapman*, 51 B.R. 663, 668 (Bankr.D.C. 1985); *In re Fauth*, supra, 79 B.R. 490, 5 Mont.B.R. at 127. The liquidation analysis of the Debtors filed with the Amended Plan, using the valuations fixed in the Court's Order of November 5, 1987, discloses a dividend would be paid to unsecured creditors upon a Chapter 7 liquidation of $65,946.39. Thus, the Debtors propose to distribute just over that amount to the unsecured creditors under the Plan. Indeed, the amendment which changes that distribution states, "In all respects, Debtors' Chapter 12 Plan (Amended 11/13/87) remains unchanged and is reaffirmed". Curiously, the November 13, 1987, Plan states—

"(9) The value, as of the effective date of the Plan, of property to be distributed under the Plan on account of each allowed, unsecured claim is not less than the amount that would be paid on such claim if the estate of the Debtors were 'liquidated under Chapter 7 of this Title on such date.'"

As is readily apparent, Paragraph 9 is totally inconsistent with the Plan amendment on payment to the unsecured creditors. In addition, allowing the Debtors to retain $49,000.00 of unsecured property, without liquidating such property to pay unsecured creditors, in fact defeats the whole purpose of Chapter 12, which is to use the Debtors' property to pay creditors. This case is unique in one fashion. The Debtors not only engage in a farming operation, but also in the sale of subdivided tracts. Evidently, under the amendment, Debtors propose to keep the subdivided tracts for their own use—much the same as retaining a portion of their farm income for their use. We must keep in mind there is no voting on the Plan by holders of unsecured claims, and as a quid pro quo of the loss of that right, the unsecured creditors have the benefit of 1225(a)(4) and the net disposible income requirement of Section 1225(b)(1). Further, since there is no absolute priority rule in Chapter 12, *Norwest Bank Worthington v. Ahlers*, —— U.S. ——, ——, 108 S.Ct. 963, 970–71, 99 L.Ed.2d 169 (1988), the only protection to the unsecured creditors must come from application of 1225(a)(4). A Plan which totally ignores such provision, under circumstances where the Debtors would deny income to the creditors from the sale of such lots, being the very business purpose of securing such property, is not a good faith Plan under 1225(a)(3). *In re Lewis Industries*, 75 B.R. 862, 4 Mont.B.R. 434, 450–52 (Bankr.Mont. 1987), held, in part, on the issue of good faith, that the term contained in 11 U.S.C. 1325(a)(3), which is identical to 11 U.S.C. 1225(a)(3) requires the Bankruptcy Court to review the proposed Plan for "fundamental fairness in dealing with one's creditors". The treatment of the unsecured creditors under the proposed amendment of November 25, 1987, is fundamentally flawed since it would allow the Debtors to retain proceeds from the property while discharging substantial claims after only minimum payments. In *Fauth*, supra, the crux of the decision was that the Plan satisfied

1225(a)(4), because the unsecured creditor would receive no payments upon liquidation, while under the Plan they were to be paid over $15,021.00. The discussion in *Fauth* regarding Section 1225(b)(1) is dicta under [1] the facts of *Fauth,* and cannot be relied upon by the Debtors in this case. I conclude the amendment filed November 25, 1987, concerning payments to unsecured creditors is contrary to law and is rejected.

In the November 5, 1987, Order, I stated, "Upon such amendment, the issue of feasibility will then be considered if the parties object to confirmation on that ground." After amendment, there has been no objections to the Plan on grounds it does not satisfy § 1225(a)(5), and thus the issue need not be decided.

IT IS ORDERED:

(1) The First Amendment to the Amended Chapter 12 Plan filed November 25, 1987, dealing with payments to unsecured creditors is rejected and denied;

(2) The claim of FLB is increased by $3,039.89;

(3) The claim of Beneficial is increased in accordance with the amendment of December 3, 1987, to $80,980.00;

(4) The Amended Plan of November 16, 1987, as amended on December 2, 1987 and December 3, 1987, is confirmed and a separate Order of Confirmation shall be issued forthwith.

---

**1.** The discussion of Section 1225(b)(1) will probably come under criticism, and this Court itself is re-examining the position. It need not be re-examined in this case because the Debtors proposed amendment fails under 1225(a)(3), 1225(a)(4) and the Plan provisions.