**In re Manuel and Brenda E. ALICEA, Debtors.**

**Bankruptcy No. 95–37587.**

United States Bankruptcy Court, D. New Jersey.

Aug. 13, 1996.

Eric J. Clayman, Jenkins & Clayman, Haddon Heights, NJ, for Debtors.

Marc Alan Krefetz, Deputy Attorney General, Trenton, NJ, for State of New Jersey, Division of Motor Vehicles.

### AMENDED MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on an objection by the New Jersey Division of Motor Vehicles ("DMV") to confirmation of the debtors' plan for adjustment of their debts under chapter 13 of title 11, United States Code ("Bankruptcy Code" or "Code"). The court reserved decision on this objection on June

11, 1996. The court has jurisdiction under 28 U.S.C. §§ 1334, 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

### FINDINGS OF FACT

The facts are not contested. The debtors are a young married couple with two children. Mr. Alicea is employed as a laborer and Mrs. Alicea is a homemaker. Schedule I states monthly income of $1500 and Schedule J states monthly expenses of $1293. The expenses listed are, however, very modest (e.g. $175 per month for food, $50 for clothing, $10 for medical and dental, and nothing for recreation for a family of four), which presumably explains why the payments were decreased from $170 per month in the original plan to $80 per month in the second modified plan. The debtors have surrendered their only motor vehicle to the creditor holding a security interest in it, and they are rejecting the lease of their residence. The plan proposes to pay $700 on two debts secured by furniture and other personal property. Unsecured claims, which were scheduled for a total of $7,045, are divided under the plan into two classes. Class I, general unsecured creditors, will receive no dividend. Class II, consisting of a debt to Jerry Lee Wardy of $1500 for child support and a debt to the New York City Finance Department of $100 for a parking ticket, are to be paid in full under the plan.

The DMV, which has filed a proof of claim for $930.23 for a surcharge and which is included in Class I under the plan, objects to confirmation. The DMV argues that chapter 13 plans which propose no dividend to unsecured creditors are not in good faith. It also objects that the separate classification of Classes I and II is impermissible discrimination against Class I. Lastly, the DMV argues that its surcharge would not be dischargeable in chapter 7, and that it violates the public policy expressed in Code section 523(a) to discharge the surcharge in chapter 13 without full or substantial payment. These arguments will each be addressed in turn.

### CONCLUSIONS OF LAW

#### I.

 Surcharges imposed by the DMV are debts within the meaning of the Bankruptcy Code. *Lugo v. Paulsen*, 886 F.2d 602, 607 (3d Cir.1989); *In re Bill*, 90 B.R. 651, 655 (Bankr.D.N.J.1988). The DMV argues that such surcharges are nondischargeable in chapter 7 under Code section 523(a)(7). *See In re Kent*, 190 B.R. 196, 203 (Bankr.D.N.J. 1995). *But see In re Lugo*, 94 B.R. 335, 341 (D.N.J.1989), *aff'd on other grounds*, 886 F.2d 602 (3d Cir.1989). The DMV concedes that its surcharges are dischargeable in chapter 13. Compare Code sections 1328(a)(2) and 727(b).

#### II.

 The DMV argues that a plan which proposes to pay no dividend to a class of unsecured creditors is per se not in good faith. Code section 1325, which lists the requirements for confirmation, includes in subsection (a)(3) the requirement that the plan must have been proposed in good faith and not by any means forbidden by law. The Code does not define good faith. It has been held, however that

> A per se minimum payment requirement to unsecured creditors as an element of good faith would infringe on the desired flexibility of Chapter 13 and is unwarranted.

*In re Estus*, 695 F.2d 311, 316 (8th Cir.1982). This court agrees. *Estus* went on to hold that good faith depends on whether the plan constitutes an abuse of the provisions, purpose or spirit of chapter 13. *Id.* It listed eleven factors to be considered. *Id.* at 317. None of those factors suggests bad faith in this case. The fact that the surcharges may be nondischargeable in chapter 7 while dischargeable in chapter 13 is not evidence of bad faith, since Congress itself elected to make the chapter 13 discharge broader than the chapter 7 discharge. *See In re Lilley*, 91 F.3d 491, 496 n. 2 (3d Cir.1996) (noting that the issue of whether a debt would be nondischargeable in a chapter 7 proceeding is not a factor to be considered when deciding if a chapter 13 petition was filed in good faith).

■ The DMV points to nothing in this case which suggests bad faith except as noted above, and the court finds nothing indicative of bad faith, with one possible exception. The DMV argues that the debtors should be required to update their Schedules I and J at least annually. The court agrees with that proposal in this case. Although it is probably unlikely that the Aliceas, who are a laborer and homemaker with very young children, will experience increases in income greater than increases in expenses during the life of the plan, it is certainly possible that their fortunes could improve. Code section 1329(a) provides that after confirmation the debtor, trustee or unsecured creditors can propose a modified plan if circumstances warrant. Where, as here, a class of unsecured creditors will receive nothing and a member of such class requests proof that circumstances continue to make that the best which the debtors can do, it is reasonable to require the debtors to verify that periodically by either filing amended Schedules I and J or a certification that there have been no changes to those schedules.

In this case, the plan provides that as required by Code section 1325(b), all of the debtor's projected disposable income from wages is to be paid to the trustee to fund the plan. The DMV argues that good faith requires that all postpetition refunds, credits and rebates must be turned over to the trustee as well "since they all represent reductions in monthly expenses and are therefore disposable income available to unsecured creditors." DMV's letter brief filed May 30, 1996 at p. 5. This argument is based upon a faulty assumption, however, since refunds, credits and rebates will often be for items which must then be repurchased for the maintenance and support of the debtors and their dependents under Code section 1325(b)(2)(A). Moreover, such a requirement would be excessive in light of the tightness of these debtors' budget, which as it is has very little room for unexpected expenses. It would also be next to impossible to enforce such a requirement. So the DMV's argument that less than all projected disposable income has been included is without merit.

## III.

■ The DMV also argues that the debtors are discriminating unfairly against Class I in favor of Class II. Code section 1322(b)(1) provides that a plan may

designate a class or classes of unsecured claims, ... but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims....

So a plan may designate more than one class of unsecured claims and discriminate in their treatment, provided it doesn't do so unfairly. Of the two claims in Class II, one is for $1500 child support. The DMV doesn't object to separate treatment of child support because it is entitled to a priority in payment under Code section 507(a)(7). The DMV does object, however, to paying the debtors' parking ticket of $100 to New York City ahead of other unsecured creditors on the grounds of unfair discrimination. The DMV argues that the debtor is attempting to create a priority for traffic fines although the Code doesn't have one. The debtors reply that because all of their assets would be exempt in chapter 7, the creditors of Class I aren't harmed by the discrimination. Debtors' brief filed May 16, 1996, at p. 4. The debtors also argue that the case of *In re Limbaugh*, 194 B.R. 488 (Bankr.D.Or.1996), on which the DMV relies, is distinguishable on its facts.

As Collier notes, the published cases vary in the standards used for determining unfair discrimination. 5 *Collier on Bankruptcy* ¶ 1322.05, p. 1322–12 (15th Ed.1996). One widely used test is that set forth in *In re Wolff*, 22 B.R. 510 (9th Cir. BAP 1982):

The test is (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*Id.* at 512. It was this test which *Limbaugh* applied.

■ The *Wolff* test has frequently been criticized, however. *See e.g. McCullough v. Brown,* 162 B.R. 506 (N.D.Ill.1993) and *In re Furlow,* 70 B.R. 973 (Bankr.E.D.Pa.1987). As both *McCullough* and *Furlow* note, the good faith element of the *Wolff* test is redundant in light of Code section 1325(a)(3). In addition, the inability to carry out the plan without the discrimination, while certainly relevant, should not necessarily be dispositive:

> The issue of whether the debtor can produce a confirmable Plan without discrimination measures only whether the debtor belongs in chapter 13; necessity cannot justify otherwise impermissible discrimination. On the other hand, it should not be necessary for the debtor to establish that every form of different treatment of claims is a matter of life or death for the Plan.

*Furlow,* 70 B.R. at 977.

■ The fact that unsecured creditors would receive nothing in chapter 7 does not mean, either, that as the debtors suggest, all forms of discrimination are therefore fair. As the district court stated in *McCullough,*

> ... it is a total non sequitur to move from the premise that *all* unsecured creditors may recover nothing in a Chapter 7 liquidation (so that none of them has a "right" to receive anything specific) to the conclusion that they may "therefore" sustain sharply different treatment—some of them receiving a greater percentage and some receiving a lesser percentage of their debts—if the debtor chooses to follow a different path under the Code.

*Id.* at 517 (emphasis in original). While this court disagrees with another conclusion in *McCullough* that the question of fairness should be viewed only from the creditors' perspective, it is certainly true that the creditors' perspective must be balanced with the debtor's to determine what constitutes fair discrimination among classes of unsecured creditors.

■ Of the approaches which this court has seen to date, the most persuasive is that taken in *Furlow:*

> different treatment is permissible if and only if the debtor is able to prove a reasonable basis for the degree of discrimination contemplated by the Plan.

*Id.* at 978.

■ Practical necessity has a bearing on the fairness of proposed discrimination. As Collier notes, when Congress amended Code section 1322(b)(1) in 1984 to explicitly approve separate classification of claims for consumer debts on which the debtor is liable with another individual, it recognized that "[i]f as a practical matter, the debtor is going to pay the codebtor claim, he should be permitted to separately classify it in chapter 13." 5 *Collier on Bankruptcy* ¶ 1322.05, p. 1322-13 (quoting, S.Rep. No. 65, 98th Cong., 1st Sess. 18 (1983)).

■ The plan proponent has the burden of proving by a preponderance of the evidence that the plan meets the Code's requirements for confirmation. *McCullough,* 162 B.R. at 516. The debtors in this case have not met that burden. The only basis offered for paying the parking ticket in full and paying nothing to other unsecured creditors without priority is that none of them would receive anything in chapter 7. As previously noted, that is an insufficient reason for the proposed discrimination.

■ Moreover, while it is not per se bad faith under Code section 1325(a)(3) to propose that unsecured creditors will receive nothing under a chapter 13 plan, it may very well be impermissible discrimination under Code section 1322(b)(1). Since a balancing of interests is required, it will tend to be true that the less that is offered to one of two or more classes of unsecured claims, the more likely it will be that such class is being discriminated against unfairly. There certainly are many possible factors which may be relevant to the determination of fairness, but the size of the respective percentage dividends is one of them.

**IV.**

■ The DMV's last argument is that it violates the public policy expressed in Code section 523(a) to discharge the DMV surcharge in chapter 13 without full or substantial payment. That argument is without merit. Congress chose to grant a broader

discharge under Code section 1328(a)(2) than under section 727(b) without imposing any minimum payment requirements, except that all of the debtor's projected disposable income be devoted to the plan (section 1325(b)(1)(B)) and that the creditors receive at least what they would receive in chapter 7 (section 1325(a)(4)). Any argument that the minimum payment should as a matter of law be higher than that must be made to Congress.

Because the debtors failed to meet their burden of proving that the proposed discrimination against Class I was fair, however, the DMV's objection to confirmation is sustained and confirmation is denied.