In re Franklyn C. LIMBAUGH, Laurie A. Limbaugh, Debtors.

Bankruptcy No. 395–35375psh13.

United States Bankruptcy Court, D. Oregon.

April 3, 1996.

Todd Trierweiler, Portland, OR, for debtors.

## OPINION

POLLY S. HIGDON, Bankruptcy Judge.

This matter came before the court for confirmation of the debtors' Chapter 13 plan. In their plan the debtors have divided the claims of unsecured creditors into two classes: (1) the claims of general unsecured creditors and (2) the unsecured restitution claim of Multnomah County. The debtors propose to make no distribution to general unsecured creditors but propose to pay Multnomah County's restitution claim in full.

No creditor or party-in-interest filed an objection to confirmation of the debtors' proposed plan based upon the proposed discriminatory classification and treatment of general unsecured claims. Even in the absence of an objection, however, the Bankruptcy Code requires this court to make an independent determination of whether a proposed Chapter 13 plan complies with the requirements of 11 U.S.C. § 1325.[1]

Section 1325 authorizes the court to confirm a plan only if the plan complies with the provisions of Chapter 13 and other applicable provisions of Title 11. Section 1322(b)(1) allows a debtor to designate a class or classes of unsecured claims only if the plan does not discriminate unfairly against any class so designated. In light of the debtors' designa-

---

1. All references to sections are to Title 11, The Bankruptcy Code, unless otherwise specifically stated.

tion of two classes of general unsecured creditors[2] this court must determine whether such classification unfairly discriminates against either class.

In this case the debtors propose to pay in full a restitution debt that was imposed as part of a criminal sanction for Laurie Limbaugh's theft of funds from her employer. The payment of the restitution debt is a condition of Ms. Limbaugh's probation. Although Ms. Limbaugh's restitution payments are made to Multnomah County, Multnomah County pays the restitution funds to Ms. Limbaugh's victim. Multnomah County acts only as a disbursing agent for the restitution funds. The funds are paid through the County to enable it to monitor a convicted criminal's compliance with the terms of his or her sentence.

In this way restitution obligations differ from fines or assessments that are frequently imposed in criminal cases. Under Oregon law fines and assessments are debts that are owed directly to the governmental entity imposing the criminal sanction. Fines are intended to punish the criminal behavior and to deter future wrongdoing. Assessments are designed to reimburse the government for the cost of programs associated with resolution of the criminal case as well as programs that aid in the rehabilitation and deterrence of a particular type of crime.[3]

Section 1328(a)(3) does not distinguish between these types of criminal sanctions for purposes of precluding discharge of such debts, and the court's reasoning herein shall apply to all types of criminal sanctions included in a sentence for a criminal conviction, including cases in which payment of a fine, assessment or restitution is not a condition of probation.

## STATEMENT OF FACTS

On April 25, 1995, Ms. Limbaugh was convicted of two counts of aggravated theft in the 1st degree. Ms. Limbaugh was sentenced to five years of probation for that conviction. As a condition of her probation Ms. Limbaugh was ordered to pay restitution in the amount of $50,951.72 for the benefit of the victim of her crime. Under the terms of her judgment of conviction and sentence Ms. Limbaugh was required to pay the restitution debt in full within 4.5 years.[4] The judgment required Ms. Limbaugh to begin making restitution payments on July 15, 1995.

Ms. Limbaugh and her husband filed their joint Chapter 13 petition three weeks later on August 7, 1995. In their Chapter 13 plan debtors propose to pay: (1) $300 per month directly to Multnomah County to pay the restitution debt and (2) $381–$450[5] per month to the Chapter 13 trustee to pay their secured creditors. According to the debtors' Schedule of Current Income, Ms. Limbaugh worked only half time in August 1995 because she was incarcerated in a work release program. The debtors project in their Schedule of Current Income that their income would rise in January 1996 when Ms. Limbaugh would be able to return to work full time. It appears from the debtors' schedules that they are submitting all of their disposable income toward the plan payments, thus meeting the requirements of 11 U.S.C. § 1325(b)(1)(B).

---

2. Although debtor's Chapter 13 plan does not reflect on its face that the debtors propose to create two classes of unsecured creditors, their budget and plan read together reveal that they propose to pay directly one unsecured creditor, Multnomah County, by paying $300 per month while paying, according to the plan terms, nothing to all other general unsecured creditors.

3. ORS 137.290 provides that a unitary assessment is "a penal obligation in the nature of a fine." ORS 137.309 also provides for a county assessment in an amount ranging from $5 to $59, which amount is not required to be imposed if the defendant is indigent or if its imposition would constitute an undue hardship. Because of

their penal nature, assessments should be treated as a form of fine for purposes of § 523(a)(7) and § 1328(a)(3).

4. Although the restitution debt is paid to Multnomah County, the Clackamas County Community Corrections probation department set the minimum restitution payment at $300 per month. This court does not understand how the restitution debt will be paid in full in 4.5 years if Ms. Limbaugh pays the minimum amount each month.

5. The debtors' Chapter 13 plan provides for payment to the trustee of $381 per month for the first 8 months and $450 per month thereafter.

## DISCUSSION

### I. Unfair Discrimination.

■ This court must determine whether the debtors should be permitted to separately classify the restitution claim and to pay that claim in full directly to Multnomah County while paying 0% to their other general unsecured claimholders.[6] Section 1322(b)(1) allows a Chapter 13 plan to designate more than one class of unsecured claims, but Section 1322(b)(1) requires that the treatment of the classes of unsecured claims so designated not unfairly discriminate against any class. A plan proponent bears the burden of proof regarding whether the requirements for confirmation have been satisfied. *In re Wolff*, 22 B.R. 510, 512 (9th Cir. BAP 1982).

■ In *Wolff* the Bankruptcy Appellate Panel for the Ninth Circuit adopted a four-factor test for evaluating whether a debtor's proposed classification and disparate treatment of unsecured claims unfairly discriminates in violation of Section 1322(b)(1). Under the test adopted by the court in *Wolff*, classification and disparate treatment does not unfairly discriminate if:

(1) the discrimination has a reasonable basis;

(2) the debtor cannot carry out the plan without the discrimination;

(3) the discrimination is proposed in good faith; *and*

(4) the degree of discrimination is directly related to the basis or rationale for the discrimination. *Wolff*, 22 B.R. at 512.

■ In *In re Whitelock*, 122 B.R. 582 (Bankr.D.Utah 1990), the bankruptcy court cited the four-part test in *Wolff* and concluded that the "good faith" factor required an inquiry into "whether the discrimination manipulates the bankruptcy system and thereby abuses the provisions, purpose, or spirit of Chapter 13." *Whitelock*, 122 B.R. at 589. This interpretation of the third factor in the *Wolff* test appropriately examines and protects against the evils (i.e., manipulation and

abuse) that Congress sought to preclude by its prohibition against unfair discrimination. This court will therefore examine as the third factor in the four-factor *Wolff* test whether the discrimination proposed in debtor's Chapter 13 plan manipulates the bankruptcy system and thereby abuses the provisions, purpose or spirit of Chapter 13.

Applying the four-factor test of *Wolff* as elucidated in *Whitelock*, this court finds that debtors' separate classification and treatment of the restitution debt would discriminate unfairly against the general unsecured creditors for the following reasons:

### (1) "*Reasonable basis for discrimination*"

■ One basis for the discrimination could be argued to be that the restitution debt is nondischargeable and the other general unsecured debts are dischargeable. This basis is not reasonable. *In re Sperna*, 173 B.R. 654 (9th Cir. BAP 1994) (nondischargeable nature of student loan debt *not*, by itself, reasonable basis for discrimination). *See also In re Smalberger*, 157 B.R. 472 (Bankr. D.Or.1993) (separate classification and payment in full of nondischargeable student loan and payment of 0% to the other unsecured creditors held to be unfair discrimination).

One might argue that the ability of a debtor to file consecutive Chapter 7 and Chapter 13 cases and thereby accomplish that which is sought by the proposed discrimination constitutes a reasonable basis for allowing the proposed discrimination. This argument assumes, incorrectly, that a debtor will always be able successfully to execute a "Chapter 20" and that the legal consequences of such filings will be the same as filing a Chapter 13 with separate classification under § 1322(b)(1).

■ The Supreme Court has held that a debtor, as a matter of law and under appropriate circumstances, may file a Chapter 13 to address nondischargeable debt after all other debts have been discharged through a

---

**6.** Those claims total $9,181 according to the debtors' schedules, not including a civil judgment in favor of the victim in the amount of $83,906. ORS 137.109 requires the court to credit the restitution amounts paid by the defendant to the victim against any civil judgment in favor of the victim.

Chapter 7. *Johnson v. Home State Bank,* 501 U.S. 78, 87–88, 111 S.Ct. 2150, 2156, 115 L.Ed.2d 66 (1991). *See also In re Metz,* 820 F.2d 1495 (9th Cir.1987). With a "Chapter 20" filing, however, the court must examine the successive filings together to determine whether they meet the statutory requirements.[7] This court believes that such filings automatically heighten the scrutiny of the good faith requirement. A debtor may not meet this heightened scrutiny for any number of reasons under the facts of a particular case.

Further, by filing a Chapter 7 a debtor faces the possibility of a creditor obtaining a court order denying dischargeability of an individual debt or denying discharge of all debts. Any such order would require the debtor to address those debts in a subsequent Chapter 13 plan and could complicate either a debtor's ability to demonstrate feasibility of a plan or his attempt to separately classify unsecured claims under § 1322(b)(1).

In short, Congress created the chapters in the Code for different purposes. Each chapter structure is different, involving a balancing between those rights given to, and those responsibilities required of, both debtor and creditor. It is for this reason that one cannot equate the filing of a Chapter 13 with a separate classification scheme with the filing of a "Chapter 20". The debtor must be required to address, independently, the requirements of the chapter(s) which she has chosen for herself. There are no shortcuts.

### (2) *"Debtor cannot carry out plan without discrimination"*

■ The debtors propose to pay Multnomah County $300 a month directly in addition to the amount that they propose to pay to the Chapter 13 trustee. The debtors can presumably perform the plan with a distribution of the $300 per month to *all* unsecured creditors as readily as they can perform a plan that provides for payment of $300 per month to only one of their unsecured creditors.

The debtors have raised the possibility that Ms. Limbaugh might be incarcerated if they discontinued paying $300 per month to Multnomah County, which would prevent her from being able to assist in funding their plan. They have presented no evidence to support this assertion. In fact, the Oregon legislature has given its state court judges the authority to modify any condition imposed as part of probation.[8] Thus Ms. Limbaugh has the ability under ORS 137.540 to seek modification of the payment terms imposed as a condition of her probation. Given those facts, this court cannot find that she cannot carry out the plan without discrimination.

Even if the debtors presented evidence that prepetition the state court had denied Ms. Limbaugh's request for modification and had ordered Ms. Limbaugh's incarceration this court would not allow the debtors to separately classify the restitution debt. In such a case the debtors might satisfy the second factor of the four-part *Wolff* test, if Ms. Limbaugh was prevented by her incarceration from assisting in the funding of the debtors' plan.[9] However, the *Wolff* test imposes conjunctive requirements *all* of which must be satisfied to justify proposed discrimination. This court would still find the proposed discrimination to be unfair for failure to satisfy the "reasonable basis" and the "good faith of proposed discrimination" requirements of the four-factor *Wolff* test.

### (3) *"Good faith of proposed discrimination"*

As the Supreme Court stated in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93

---

7. In *Metz* the court emphasized the fact that the debtor had a bona fide change of financial circumstances between the Chapter 7 and Chapter 13 filings apart from the discharge of debts through the Chapter 7.

8. ORS 137.540 provides in pertinent part:

   (1) The court may sentence the defendant to probation, which shall be subject to the following general conditions unless specifically deleted by the court. The probationer shall:
   (a) pay supervision fees, fines, restitution or other fees ordered by the court . . .
   (4) The court may at any time modify the conditions of probation.

9. Some defendants may be incarcerated only on the weekends, allowing them to work and contribute funds to the plan.

L.Ed.2d 216 (1986), the "federal bankruptcy courts should not invalidate the results of state criminal proceedings." *Id.* at 47, 107 S.Ct. at 360. Under the Bankruptcy Act of 1898 courts consistently refused to interpret the statutory framework as allowing the discharge of sanctions, including restitution, arising out of the debtor's criminal behavior. *See generally Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). This prohibition on interference with state court criminal proceedings and sanctions arises from the tradition of bankruptcy court deference to criminal judgments and the limits that federalism imposes on interference with a state's administration of its criminal justice system. *Kelly*, 479 U.S. at 44–51, 107 S.Ct. at 358–62. In *Kelly* and in *Pennsylvania Public Welfare Dept. v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), two recent cases, the Supreme Court, in strong language, emphasized that the bankruptcy courts should not interfere in the states' administration of their criminal justice system.

In *Kelly* the Supreme Court addressed the issue of whether a restitution obligation was dischargeable in a Chapter 7 case. The Supreme Court held that 11 U.S.C. § 523(a)(7) precluded the discharge in Chapter 7 of any condition that a state court imposed as part of a criminal sentence, including a restitution obligation imposed as a condition of probation.[10] The Supreme Court emphasized in *Kelly* that bankruptcy courts should not invalidate the results of state criminal proceedings or interfere with state criminal proceedings. The Court expressed a concern that state court judges would be unable to fashion appropriate criminal sanctions if such sanctions were subject to remission by the bankruptcy courts.

Four years later the Supreme Court was asked to decide whether the reasoning set forth in *Kelly* applied to preclude the discharge of restitution obligations in a Chapter 13 case. In *Pennsylvania Public Welfare Dept. v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), the Supreme Court held that restitution obligations are "debts" within the meaning of Section 101(11) and, as not specifically excepted from discharge under Section 1328(a), were intended by Congress to be dischargeable in a Chapter 13 case. After admitting that its holding "may hamper the flexibility of state criminal judges in fashioning appropriate sentences and require state prosecutors to participate in federal bankruptcy proceedings to safeguard state interests,"[11] the majority stated that its holding was *not* a retreat from the principles articulated in *Kelly*. The Court emphasized that the Bankruptcy Code should not be read to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.

In November 1990, Congress considered the Supreme Court's ruling in *Davenport* and quickly enacted legislation to prevent the discharge of restitution obligations in a Chapter 13 case. Crime Control Act of 1990, Pub.L. No. 101–647 (1990). Thus, in the one instance in which the Supreme Court interpreted the Bankruptcy Code to authorize bankruptcy courts to remit a sanction imposed as part of a criminal proceeding, Congress acted quickly to nullify that ruling.

■ This court believes that these cases and the legislation enacted to overrule the *Davenport* decision clearly direct the bankruptcy court to very carefully consider approbation of the terms of a Chapter 13 plan which interfere with any of the elements of the structure the state court has established to punish a wrongdoer under a particular set of facts. By allowing debtors to separately classify the restitution debt this court would reduce the impact of the criminal sanctions imposed by the state court by requiring debtors' innocent unsecured creditors to subsidize Ms. Limbaugh's criminal sanctions. Two purposes of criminal sanctions are to deter and to punish the wrongdoer. Both of these purposes are undermined when innocent creditors are required to help pay for a debtor's criminal sanctions.

---

**10.** Congress later amended § 523 to specifically include restitution payments as nondischargeable debts. Violent Crime Control & Law Enforcement Act of 1994, Pub.L. No. 103–322, 1994.

**11.** *Davenport*, 495 U.S. at 564, 110 S.Ct. at 2133.

In setting the amount of the restitution payment the state court judge must consider, among other factors, the defendant's ability to pay.[12] It could be argued that by setting the amount of the monthly restitution payment at $300 the state court effectively decided that Ms. Limbaugh's other creditors should contribute to payment of her restitution obligation. The state court documents provided to this court reflect that the state court judge ordered that the restitution amount be paid in full within 4.5 years and delegated responsibility for determining the appropriate monthly payment to the probation officer.[13] This court does not know whether, in setting the monthly payment, the probation officer learned of, and took into consideration, the debtors' other financial obligations or whether any financial information debtors provided was identical to the information provided to this court. In any event, the most that this court can conclude from the state court order requiring Ms. Limbaugh to pay $300 per month is that a decision may have been made at the state level to require Ms. Limbaugh outside bankruptcy to *defer* payment of other debts while paying the restitution debt. This court cannot conclude that the state court judge intended that Ms. Limbaugh file a Chapter 13 case and propose a plan which would provide preferential payment of the restitution debt through separate classification with the concomitant *discharge* of the debts of the other unsecured creditors with little or no payment.[14]

Allowing the debtors to repay the restitution debt preferentially further prejudices the rights of the general unsecured claimholders who already are disadvantaged vis-a-vis holders of any nondischargeable claim by virtue of the extinction of their claims upon entry of an order of discharge. This court finds that such discrimination manipulates the bankruptcy system and thereby abuses the purpose and spirit of Chapter 13. The discrimination thus fails the "good faith" portion of the four-part *Wolff* test.

Further support for a finding of manipulation, if needed, lies in the practical result, through separate classification, of a priority in payment to the preferred creditor. As Congress has provided priority of payment in Chapter 13 for some unsecured debt,[15] absence of priority status suggests that Congress generally did not intend such status for the separately classified, preferred debt. Given what this court believes is the appropriate role of the bankruptcy court with regard to criminal sanctions, this court is not willing to create a priority status for restitution claims absent explicit congressional direction.

### (4) *"Degree of discrimination directly relates to rationale for discrimination"*

In light of this court's determination that the discrimination lacks a reasonable basis and fails the "good faith" test, this court need not examine whether the degree of discrimination relates to the rationale for the discrimination.

---

12. ORS provides in pertinent part:
   (2) In determining whether to order restitution which is complete, partial, or nominal, the court shall take into account:
   (a) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant;
   (b) The ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court; and
   (c) The rehabilitative effect on the defendant of the payment of restitution and the method of payment.
   (3) If the defendant objects to the imposition, amount or distribution of the restitution, the court shall at the time of sentencing allow the defendant to be heard on such issue.

13. ORS 161.675 authorizes a state court judge to delegate to the court clerk or a probation officer the responsibility for establishing a schedule of payments to satisfy a payment obligation imposed as a condition of probation.

14. A serious review by the state court of a defendant's other financial obligations before setting the amount or terms of a restitution obligation might eliminate the need for many bankruptcy filings.

15. Certain taxes have been accorded priority treatment since the Bankruptcy Code was enacted. 11 U.S.C. §§ 507(a)(8) and 1322(a)(2). More recently certain support obligations have been accorded this treatment. § 507(a)(7).

■ This court holds that debtors' proposed separate classification and treatment of Ms. Limbaugh's restitution debt constitutes unfair discrimination under 11 U.S.C. § 1322(b)(1). The court must therefore deny confirmation of debtors' Chapter 13 plan.

The debtors might be able to propose a confirmable Chapter 13 plan if they were allowed to pay a lower amount towards Ms. Limbaugh's restitution debt than the $300 per month amount set by the Clackamas County Community Corrections probation department. As noted above, ORS 137.540 authorizes the state court to modify the conditions of probation at any time. No such modification appears to have been requested in this case. The question therefore arises whether under these circumstances the bankruptcy court should allow any change, through the plan terms, in the court-ordered restitution payments to enable the debtors to propose a feasible Chapter 13 plan without separate classification.

Debtors who, because of their debt structure, have difficulty in meeting the payment requirements of criminal sanctions should first petition the state court for a reduction in those payments pursuant to ORS 137.540. If the state court either refuses to grant any relief or provides insufficient relief, the debtor may consider filing Chapter 13. However, debtors should be sensitive to the Ninth Circuit's ruling in *Hucke v. State of Oregon*, 992 F.2d 950 (9th Cir.1993).

The Ninth Circuit's reasoning in *Hucke* supports not only bankruptcy court deference to state criminal rulings but also highlights the fact that a debtor's attempt to modify the terms of his criminal sanction payment schedule through a Chapter 13 plan may be defeated legitimately by the state court under appropriate circumstances. In *Hucke*, the Ninth Circuit held that an Oregon state court judge acted within his discretion in revoking a debtor's probation and ordering his incarceration for failure to make restitution payments despite debtor's filing for protection under the Bankruptcy Code. The bankruptcy court in *Hucke* had determined that the state court judge violated the automatic stay by revoking the debtor's probation and ordering his incarceration because

the debtor failed to make his restitution payments after filing a Chapter 13 case. The bankruptcy court requested that the district court withdraw reference and order the state court judge to release the debtor from jail. The district court complied with the bankruptcy court's request and ordered the state court judge to release the debtor from custody.

The Ninth Circuit overruled the district court and held that 11 U.S.C. § 362(b)(1) did not stay the state court judge from revoking the debtor's probation because the state court's action was a "continuation of a criminal action," which is excepted from the automatic stay. The Ninth Circuit was careful in *Hucke* to distinguish the facts in that case from a situation in which the state merely proceeded with an action to collect a restitution debt from a person who has defaulted on a restitution obligation and thereafter filed bankruptcy. The automatic stay of 11 U.S.C. § 362 would preclude a mere collection action. The state would *not* be precluded by Section 362 from revoking a debtor's probation, however, as long as the revocation was not intended merely to coerce payment from the debtor. *Hucke*, 992 F.2d at 953. Thus, the Ninth Circuit's reasoning in *Hucke* emphasizes that the bankruptcy court should not interfere in criminal proceedings or sanctions unless the state is merely pursuing a collection action postpetition.

**CONCLUSION**

■ Separate classification of restitution, fines, and assessments included in a sentence for a criminal conviction constitutes unfair discrimination under 11 U.S.C. § 1322(b)(1). Plans containing such provisions are not confirmable. Debtors who are unable to pay their criminal sanctions because of their debt structure should look for relief to the state court under ORS 137.540.

By this opinion the court does not mean to suggest that a debtor may not file a Chapter 13 case if the debtor owes criminal fines, assessments or restitution obligations. In the absence of unfair discrimination, a debtor may file a Chapter 13 case after seeking modification of such sanctions from the state court under ORS 137.540. A debtor may

then propose modification of such debts through the terms of a Chapter 13 plan. However, to the extent that modification of any terms imposed by the state court leads a state court judge to revoke a debtor's probation and incarcerate the debtor or otherwise revise a debtor's criminal sanction, this court may be constrained by the *Hucke* decision not to interfere with such action.

This opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 7052, they will not be separately stated.

An order consistent herewith shall be entered.