**In re Goldie E. ELLISON, Debtor.**

**Fred C. Moon, Chapter 7 Trustee, Plaintiff,**

v.

**Big R Sand & Gravel, Inc., and Kevin Russell, Defendants.**

**Bankruptcy No. 98–60991. Adversary No. 99–6043.**

United States Bankruptcy Court, W.D. Missouri, Western Division.

Dec. 27, 1999.

Fred Charles Moon, Springfield, MO, for Plaintiff or Petitioner.

David E. Schroeder, Springfield, MO, for Kevin Russell.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The Chapter 7 trustee Fred Moon (the trustee) filed a Complaint for Declaratory Judgment to determine the rights to a payment in the amount of $20,000.00.  The

parties filed Stipulated Facts and Briefs in support of their respective positions, and consent to decision based on the Pleadings. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (K) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### FACTUAL BACKGROUND

Debtor Goldie Ellison was the sole owner of an accounting firm known as Ellison Accounting, Inc. On April 30, 1997, Ms. Ellison was charged with four Class C felonies for stealing from defendant Big R Sand & Gravel, Inc. while serving as its accountant. Kevin Russell is the owner of Big R Sand & Gravel. On June 19, 1997, Ms. Ellison pleaded guilty to the charge of stealing by deceit, and was ordered to pay restitution in the amount of $68,630.22 by the Circuit Court of Taney County, Missouri. The Order of Conviction provided that Ms. Ellison be sentenced to two years in the custody of the Department of Corrections for the offense of stealing by deceit.[1] The Order of Conviction further provided that the execution of sentence be suspended, and that Ms. Ellison be placed on probation for five years, provided: (1) that she sell a piano and turn the proceeds over to Big R Sand & Gravel, Inc.; (2) that she make restitution in an amount set by the court; (3) that she make an assignment to Big R Sand & Gravel of monies owed her by James Welch; (4) that she assist Big R Sand & Gravel in determining the restitution; (5) that she maintain full time employment; (6) that she advise all present and future clients of this conviction; and (7) that she pay no less than 25 percent of her gross monthly income to restitution.[2]

On September 7, 1996, prior to her conviction, Ms. Ellison had entered into an agreement for the sale of Ellison Accounting, Inc. to James Welch (the Sale Agreement).[3] On June 3, 1998, Ms. Ellison filed this Chapter 7 bankruptcy petition. At the time of filing a disputed balance remained due and owing under the Sale Agreement. On February 23, 1999, the trustee, Ms. Ellison, Ellison Accounting, Inc., Kevin Russell, and James Welch entered into a Settlement Agreement whereby Mr. Welch proposed to make a lump sum payment to the trustee in the amount of $20,000.00 in full satisfaction of the Sale Agreement.[4] The motion for approval of the Settlement Agreement acknowledges that Mr. Russell and the trustee do not agree as to the disposition of the payment to be made by Mr. Welch, but both do agree that a payment is due from Mr. Welch to someone. On July 27, 1999, this Court entered an Order approving the Settlement Agreement.[5] On September 22, 1999, Mr. Welch paid to the trustee the sum of $20,000.00. That sum is being held in an interest bearing account pending this Court's Declaratory Judgment as to who is entitled to the funds. Mr. Russell contends that the payment from Welch is not property of the estate because, either Ms. Ellison assigned her right to the payment to Big R Sand & Gravel in exchange for probation, or, the payment is part of Ms. Ellison's restitution, therefore, the estate has no claim to the payment. The trustee argues that Ms. Ellison never made a valid assignment of her right to payment from Welch, therefore, she retained an interest in the payment sufficient to make the payment property of the bankruptcy estate.

---

1. Doc. # 13 (Stipulated Facts), Ex. B.

2. *Id.*

3. *Id.*, Ex. A.

4. Case No. 98–60991, Doc. # 25 (Trustee's Motion for Approval of Settlement Agreement filed with this Court on July 1, 1999), Ex. A.

5. *Id.*, Doc. # 26.

The issues to be decided here are whether the Order of Conviction and Plea Agreement, without more, serve as a valid assignment of Ms. Ellison's right to receive the payment from Welch; and, whether a payment designated as restitution becomes property of the estate.

## DISCUSSION

■ The Order of Conviction provided as a special condition of probation that Ms. Ellison "make an assignment of the Welch obligation to the victim." [6] The Order of Probation, however, provides that as a special condition of probation, Ms. Ellison must "[u]se money from Welch Accounting as restitution." [7] An assignment is valid if the circumstances evidence a clear present intention on one side to assign and on the other side to receive.[8] A mere agreement to assign a debt at some future time does not operate as an assignment and does not vest any interest in the assignee.[9] The Order of Conviction instructs Ms. Ellison to "make an assignment of the Welch obligation." [10] Big R Sand & Gravel was not a party to the Order of Conviction. Although Ms. Ellison was the subject of the Order of Conviction, she did not sign the Order, or take any steps, thereafter, to actually make an assignment of the Welch obligation. At most, the Order of Conviction evidenced an agreement on behalf of Ms. Ellison to make an assignment of the Welch obligation at some future date as a condition of probation. The Order of Conviction, however, does not evidence a present intention on behalf of Ms. Ellison to assign the obligation, and it certainly does not evidence any intent on behalf of Big R

Sand & Gravel to receive the assignment. One test to determine if an assignee has accepted an assignment is whether the assignee sought performance under the assignment.[11] In *Barker v. Danner,* the court found that the filing of a lawsuit to collect on an assigned debt was evidence that the assignee accepted the assignment, and that the assignment was valid.[12] There is no evidence that Big R Sand & Gravel or Mr. Russell ever sought payment from Mr. Welch directly. I, therefore, find that the Order of Conviction did not effectuate a valid assignment of Ms. Ellison's right to payment from Mr. Welch. The Order of Conviction gave Big R Sand and Gravel the right to force Ms. Ellison to make the assignment or face revocation of her probation. But some further step was necessary on the part of the assignor and the assignee in order for the assignment to be enforceable against either Mr. Welch or the trustee.

■ A bankruptcy trustee holds the rights of a perfect lien creditor as to the debtor's assets at the commencement of the bankruptcy case.[13] Since the assignment was not completed prior to the commencement of the bankruptcy case, the trustee succeeded to the debtor's interest free of any purported assignment.

■ Although Ms. Ellison did not assign her interest to defendants, that is not the end of the analysis, because the Order of Probation characterized the Welch payment, not as an assignment, but as restitution. The issue that faces this Court, if the Order of Probation controls, is whether the estate has an interest in a payment

6. *Id.,* Ex. B.

7. *Id.,* Ex. C.

8. *Miller v. Dannie Gilder, Inc.,* 966 S.W.2d 397, 398 (Mo.Ct.App.1998).

9. *State ex rel. United Industries Corp. v. Mummert,* 878 S.W.2d 494, 497 (Mo.Ct.App.1994) (quoting *City of Kansas City v. Milrey Develop-*

*ment Co.,* 600 S.W.2d 660, 664 (Mo.Ct.App. 1980)).

10. Doc. # 11, Ex. B.

11. *Barker v. Danner,* 903 S.W.2d 950, 955 (Mo.Ct.App.1995).

12. *Id.*

13. 11 U.S.C. § 544(a).

designated as restitution. I note first that Missouri law permits restitution as a condition of probation:

> 2. In addition to such other authority as exists to order conditions of probation, the court may order such conditions as the court believes will serve to compensate the victim, any dependent of the victim, or society. Such conditions may include, but shall not be limited to:
>
> > (1) Restitution to the victim or any dependent of the victim, in an amount to be determined by the judge.[14]

And, it is undisputed that Ms. Ellison's obligation to Big R Sand & Gravel is nondischargeable. On December 10, 1998, this Court entered a judgment to that effect.[15] Counsel for Mr. Russell and Big R Sand and Gravel relies on *Becker v. County of Santa Clara (In re Nelson)*,[16] for the premise that a restitution payment made by a debtor pursuant to a state criminal conviction could not be avoided as a preferential transfer.[17] For the same reason, counsel argues, the decision of a state court to require the debtor to assign a portion of her assets to one of her creditors should be controlling in a later bankruptcy case. The *Nelson* court looked to the Supreme Court for guidance. In *Kelly v. Robinson*,[18] the Supreme Court had held that a criminal restitution obligation imposed as a condition of probation in a state criminal proceeding was not subject to discharge.[19] The Supreme Court relied upon express language of the Bankruptcy Code (the Code) that excepts debts for fines, penalties, or forfeiture from discharge:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> > •    •    •    •    •
>
> > (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss.[20]

The Supreme Court reasoned that restitution orders are imposed for the benefit of the state, that the state is interested in rehabilitation and punishment, not the victim's desire for compensation, and that the state's interest is sufficient to place restitution orders within the meaning of section 523(a)(7).[21] The *Nelson* court then cited *Kelly v. Robinson* for the premise that the goal of the Code is to minimize interference with a state's criminal justice system, and it further found that to allow a trustee to avoid a restitution payment would interfere with that system.[22]

Other courts, however, have drawn different conclusions from the analysis in *Kelly v. Robinson*. In *In re Bennett*,[23] the Court found no express priority for criminal restitution judgments in section 507 of the Code. While the *Bennett* Court agrees that *Kelly v. Robinson* stands for the premise that restitution judgments are nondischargeable, it refused to find such debts are assigned any special priority over other debts when it comes to distribution of assets in a bankruptcy estate. The Court found that it had no authority to create a new priority for victims of crimes, as that is the province of Congress.[24] The

---

14. Mo. Stat. Ann. § 559.021.2(1) (1999). *See also Grossoehme v. Cordell,* 904 S.W.2d 392, 394 (Mo.Ct.App.1995).

15. Adv. No. 98–6071, Doc. # 7 (Final Order and Judgment).

16. 91 B.R. 904 (N.D.Cal.1988).

17. *Id.* at 906.

18. 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

19. 479 U.S. at 53, 107 S.Ct. at 362–63.

20. 11 U.S.C. § 523(a)(7).

21. 479 U.S. at 53, 107 S.Ct. at 362–63.

22. 91 B.R. at 906.

23. 237 B.R. 918 (Bankr.N.D.Tex.1999).

24. *Id.* at 923.

Court found that to create such a priority was not only unauthorized, but also unfair:

> In substance, the first "victims" would be preferred over the second "victims" even though the first "victims" have the benefit of their debts not being discharged ..., while the debts owing to the second set of "victims" have been "discharged." [25]

In other words, the Code ensures that debts owed to victims of crimes cannot be discharged by a subsequent bankruptcy filing, but the Code does not guarantee that those same victims will be paid from assets of the estate at the expense of other honest creditors.

In *In re Limbaugh,* the Court refused to confirm a Chapter 13 plan that proposed to pay in full a restitution debt while paying nothing to other unsecured creditors.[26] The *Limbaugh* Court found such a proposal discriminatory and lacking in good faith:

> By allowing debtors to separately classify the restitution debt this court would reduce the impact of the criminal sanctions imposed by the state court by requiring debtors' innocent unsecured creditors to subsidize Ms. Limbaugh's criminal sanctions. Two purposes of criminal sanctions are to deter and punish the wrongdoer. Both of these purposes are undermined when innocent creditors are required to help pay for a debtor's criminal sanctions.[27]

The analysis in *Limbaugh* is, likewise, relevant in a Chapter 7 case. The Order of Probation not only requires Ms. Ellison to use the money from Welch Accounting as restitution, but it also requires Ms. Ellison to pay no less that 25 percent of her gross monthly income until the entire debt to Big R Sand and Gravel is paid in full.[28] That debt is nondischargeable. Big R Sand and Gravel has the right to be made whole eventually even if it does not receive the Welch payment. Ms. Ellison's bankruptcy schedules indicate that she owes $2,035.00 in unsecured priority debt,[29] and $31,931.00 in unsecured nonpriority debt.[30] That figure does not include the nondischargeable debt in the amount of $68,630.22 that she owes to Big R Sand and Gravel. She received a discharge of the general unsecured nonpriority debt on March 25, 1999.[31] If I were to find that the bankruptcy estate has no interest in the Welch payment, Ms. Ellison would be allowed to reduce a nondischargeable debt by a substantial amount, and her other creditors would receive no payments. Nothing in the statute indicates that Congress intended to reward debtors who have been convicted of a crime, and who, thus, have nondischargeable restitution debts, by allowing the bankruptcy estate to pay the restitution debt at the expense of other creditors. Otherwise, Congress would have granted restitution debts a priority in distribution.

In *Miller v. Cumis Insurance Society (In re Lacefield),*[32] the Court found that a Chapter 7 trustee could avoid as a preferential transfer the debtor's prepetition restitution payment.[33] In so holding, the *Limbaugh* Court looked to the Code for guidance. It found that all of the elements of section 547(b) were present, that no exceptions applied, and that none of the

**25.** *Id.*

**26.** 194 B.R. 488, 495 (Bankr.D.Or.1996).

**27.** *Id.* at 493.

**28.** Doc. # 13, Ex. C.

**29.** Case No. 98–60991, Schedule E.

**30.** *Id.* at Schedule F.

**31.** *Id.* at Doc. # 22.

**32.** 167 B.R. 89 (Bankr.E.D.Ky.1994).

**33.** *Id.* at 91. *See also Zimmerman v. Itano Farms, Inc. (In re Currey),* 144 B.R. 490, 495 (Bankr.D.Mont.1992) (holding that the beneficiary of a restitution payment was a creditor, thus, the payment could be recovered as a preference); *Bakst v. Atlantic Nat'l Bank (In re Kayajanian),* 27 B.R. 711, 712 (Bankr. S.D.Fla.1983) (holding that a restitution payment was in satisfaction of a debt, therefore, it could be avoided as a preference).

limitations on the trustee's avoidance powers were relevant.[34] As in this case, the *Limbaugh* Court found that the avoidance of a restitution obligation does not extinguish the obligation, or alter the nondischargeability of that obligation.[35] Rather, avoiding a preferential restitution payment forces the debtor to be responsible for his or her criminal behavior, not other unsecured creditors.

I note that the Chapter 7 trustee filed this adversary proceeding in Order for this Court to determine the rights of the parties as to the payment from Welch.[36] I find, therefore, that Big R Sand and Gravel failed to obtain a valid assignment of the payment more than 90 days before Ellison filed her Chapter 7 bankruptcy petition, as it had the right to do. Big R Sand & Gravel is, therefore, an unsecured creditor with the same rights to payment from the estate as all other unsecured creditors. As discussed above, the Code does not assign special priority to restitution payments. Such payments would, therefore, be avoidable by the trustee without some other special exception. The designation of the Welch payment as restitution by the Circuit Court of Taney County, Missouri, does not, without more, destroy the estate's interest in that payment. I, thus, find that Ms. Ellison's bankruptcy estate has an interest in the Welch payment superior to that of Big R Sand & Gravel, and that Big R Sand & Gravel is entitled to its pro rata distribution from that payment to reduce, but not eliminate, its general, unsecured, nondischargeable debt.

An Order in accordance with this Memorandum Opinion will be entered this date.